PERKINS & WIFE APPELLANTS *v.* JOHN H. GEORGE Ex'R. AP-
PELLEE.

Where the wife of a judge of probate of the county where a testator had his domicil, is inter-
ested in the estate both as heir and legatee, the testator having died since the act of
July 4, 1860, it was *held* that the judge was not interested as heir or legatee, within the
provisions of the Revised Statutes, ch. 152, secs. 10 and 11, and that consequently the
judge of probate of an adjoining county had no jurisdiction of the probate of such will.

It was also *held* that the interest of such judge disqualified him to sit in the probate of that
will; but that, upon appeal from his decree declining to act, the whole case would be
brought within the jurisdiction of the Supreme Court of Probate.

It was further *held* that the construction and effect of the will, in respect to the husband's in-
terest in a legacy to his wife, or in her distributive share, must be determined by the laws
in force at the testator's death, when the will took effect, and not when the will was
made.

THIS is an appeal from the decree of the Judge of Probate of Hills-
borough county, approving the will of Paul R. George, late of Hopkin-
ton, in the county of Merrimack, deceased, and whose domicil was
there at the time of his death. The will had been duly presented for
probate to the Judge of Probate of Merrimack county, who declined to
take jurisdiction, upon the ground that his wife was interested in the es-
tate of the deceased, both as heir and legatee, and thereupon the will
was presented to the Judge of Hillsborough county, to be approved and
lowed.

The other material facts sufficiently appear in the opinion of the
Court.

*Foster*, for appellants.

*Caleb Cushing* and *Tappan*, for appellee.

BELLOWS, J. The first question in this case is, whether the judge of
probate for the county of Merrimack was interested as *heir* or *legatee*
within the meaning of the Rev. St. ch. 152, secs. 10 and 11, so as to
give jurisdiction to a judge of an adjoining county. If not, then the
decree of Judge Cross has no validity, and this appeal must be dis-
missed; and in that case the whole matter is properly before this court
in the appeal of John H. George from the decree of Judge Perkins, de-
clining to entertain jurisdiction of the probate of the will in question.

Section 10 of the law referred to provides that "no judge of probate
shall act as such in the settlement of any estate wherein he is interested
as heir or legatee, executor or administrator, or as guardian or trustee of
any person." And section 11 gives to the judge of probate of an ad-
joining county jurisdiction in every such case.

It is clear that Judge Perkins himself was, strictly speaking, neither
heir nor legatee, and the question is, whether the fact that he was the hus-
band of one who was both heir and legatee would make him so inter-
ested within the meaning of that provision. At common law he would
undoubtedly be disqualified by this connection; but it is only when he is
interested in one of the modes pointed out, that a judge of an adjoining

county has jurisdiction.    In all other cases of disqualification by reason of relationship, having acted as counsel, and the like, the judge should decline to sit, and upon appeal the whole case would be brought within the jurisdiction of the Supreme Court of Probate.    This was held in *Moses & al. Ex'rs.* v. *Julian & ux. Appts.*, Rockingham County, December Term 1863, where the judge of probate was held to be disqualified by reason of having written the will.

In this way jurisdiction is obtained by the Supreme Court, and, therefore, as there can be no failure of justice, there is no ground for saying, that, by implication, the judge of probate is empowered to sit, notwithstanding at common law he would be disqualified, though not interested in the manner pointed out in the statute.

Upon the point of interest it will be perceived, that, by the law of July 4, 1860, it is provided that every married woman shall hold to her own use, free from the interference or control of her husband, all property inherited by, bequeathed, given or conveyed to her ; and, by section third of that act, she may by will devise any real estate so held by her, and even to her husband, in the same manner as if she were sole and unmarried, and may sue or be sued in her own name, as though sole, in all matters pertaining to said property, and upon all debts contracted by her before marriage.    Similar provisions were made by the law of 1846 Comp. St. ch. 158, sec. 15 ; and under that it has been decided that the wife had full power over property thus held by her, to sue, lease and otherwise dispose of it to whomsoever she chooses, as if she had never been married ; and that, so far as such property is concerned, she is to be treated and regarded to all intents and purposes as a *feme sole* ; and upon these principles it would seem that she might lease it to her husband.    *Albin* v. *Lord*, 39 N. H. 203.    The same principles must apply equally to property held by the wife under the law of July 4th, 1860.

In fact, these provisions were borrowed from the well established principles of courts of equity, where it has long been held, in respect to antenuptial agreements for securing to the wife her separate property, that she has the full power of disposing of it, whether real or personal, by any suitable act or instrument in her lifetime, or by her last will, in the same manner, and to the same extent, as if she were a *feme sole.*    2 Story Eq. Jur. sec. 1390, and cases cited ; Chancey on Husband and Wife, 358, 365.

Under our laws, then, the husband cannot be regarded as having any interest in the property held by the wife to her sole and separate use ; but, in respect to that, her rights, remedies and responsibilities are substantially the same as if she were sole and unmarried.    It is true, that, although he has no marital rights over the property, yet, as he is bound to maintain his wife, he is indirectly interested in her acquiring property by inheritance, devise, or otherwise ; but this, we think, is not the interest contemplated by the statute under consideration.    The same may be said in respect to his children, and even to his parents for whose support he is sometimes bound, and therefore he would be indirectly interested in their acquiring the means of their own support.

It will be perceived that in this case the will was made before the act of July 4, 1860, but it did not take effect until after, and therefore the construction of it, according to the adjudged cases in this State, is to be governed by the law in force at the death of the testator. *Loveren* v. *Lamprey*, 22 N. H. 434, and cases cited. There it was held that after-acquired real estate would pass by a will made before the passage of the Revised Statutes,—the death of the testator being since,—although, by the law in force when the will was made, such estate would not pass. The same doctrine is recognized in *Pierce* v. *Richardson*, 37 N. H. 306, where it was held that the capacity of the wife to make a will must depend on the law in force at her death, and not at the making of the will; and the devise to her husband was held invalid, she having died after the law of 1854, although the will was made in 1850, when such a devise might have been valid. A similar doctrine is held in New York and Massachusetts. *De Peyster* v. *Clendenning*, 8 Paige Rep. 295; *Bishop & al.* v. *Bishop*, 4 Hill, 138, where it was held that an estate devised to the son who died before the testator, vested in the son's children by virtue of a law passed after the making of the will and before the testator's death, although by the law in force when the will was made the devise would have lapsed on the death of the son. The same general doctrine is recognized in *Cushing & al.* v. *Aylwin*, 12 Met. 169, and *Pray & al.* v. *Waterston & al.* 12 Met. 262.

In some States a different rule prevails, as in Connecticut and Pennsylvania, upon ground that it would be giving the statutes a retrospective effect; but if the will is regarded as taking effect not until the death of the testator, as is held in New Hampshire, this objection would not apply.

A question of a like character arises where a man, having made a will of personal property, changes his domicil to a place where by the local law the will would be invalid, and dies there. In such cases it is held that the law of his domicil at the time of his death, and not at the time of the making of his will, must govern. 1 Jar. on Wills, 4, note 1; *Hyman* v. *Gaskins*, 5 Iredell, 267; 2 Greenl. Ev. sec. 668; Story on Conflict of Laws, 473, and cases cited; and Ibid. sec. 468, citing *Desesbats* v. *Berquiers*, 1 Binney's Rep. 306, where it was decided that a will of goods must be valid by the law of the testator's domicil at the time of his death, and this is said by Story to be the law of the American courts.

In regard to the *interpretation* of wills in the case of such change of domicil, it has been said that the law is not fully settled. 6 Greenl. Cruise Dig. 167, note and cases; 2 Greenl. Ev. sec. 671. Upon this point there might be cases where the construction to be given to terms used in a will would follow the meaning of such terms in the place of the testator's domicil when the will was made; but we think the principle of the New Hampshire cases before cited, is decisive that the law in force at the death of the testator in the case before us must determine the interest acquired by the wife of Judge Perkins by the bequest to her.

We are therefore of the opinion that the judge of probate of the coun-

ty of Merrimack had no interest in this estate within the meaning of the statute before cited, and consequently that a judge of an adjoining county had no jurisdiction, and *the appeal, therefore, must be dismissed.*