Strafford, }
May 5, 1903. }

## ROBERTS & a.  v.  DOVER.

Testimony of a former mayor is admissible for the purpose of showing that persons making sewer connections during his administration paid the established fees, when it does not appear that the facts sought to be proved are evidenced by documents recorded in the city clerk's office or elsewhere.

The operation of physical agencies may be shown by evidence of experiments or actual occurrences under circumstances similar to those disclosed by the case on trial.

In an action against a city for injuries sustained by the overflow of a public sewer, evidence that another sewer forming part of the same system, and similarly situated and used, became obstructed and overflowed at other times, is admissible to establish the insufficiency of the sewer in question.

A city is liable for injury to private property caused by the overflow of a public sewer, when it had notice that the sewer was obstructed or overtaxed and negligently failed to remedy the defect.

CASE, for negligently causing water to flow from the defendants' sewer through the plaintiffs' drain into the cellar of their store on Central avenue in Dover, on July 18, 1901. Trial by jury and verdict for the plaintiffs. Transferred from the February term, 1902, of the superior court by *Wallace*, C. J.

The plaintiffs' evidence tended to show that for a time beyond the memory of any living person the city of Dover had maintained a stone sewer on the lower end of Washington street, from Locust street to the Cocheco river. The city had also maintained, for more than thirty years, another public sewer on Central avenue, which united with the Washington-street sewer at the intersection of Central avenue and Washington street. The Washington-street sewer from the river up to the intersection of Central avenue would be represented by the lower part of the letter Y, and the part of the Washington-street sewer above the intersection to Locust street and the Central-avenue sewer would be represented by the upper parts of the letter Y. The mouth of the Washington-street sewer was smaller than the stone sewer above, so that it could not discharge as much water as the sewer could carry. Within the last twenty years and more, as the city has expanded, new sewers draining new streets and territory have been connected with the two main sewers on Washington street and Central avenue, and in this way the amount of sewage and water flowing into these sewers has increased very largely. Within the last few years the Washington-street sewer and that on Central avenue have several times failed to carry off the water

and sewage flowing into them, either because the sewers were clogged or because they were insufficient in size.

The two parts of these sewers represented by the upper parts of the letter Y were on substantially the same level, and for many years prior to July 18, 1901, were in the same condition they were at that date. Both discharged sewage toward their junction, and thence down the Washington-street sewer to the river. On July 18, 1901, a tannery or belt factory discharged hair and pieces of hide into a sewer emptying into the Central-avenue sewer above the plaintiffs' drain, and this state of affairs had continued for many years. For many years prior to July 18, 1901, the part represented by the lower part of the letter Y was in the same condition it was on that date, except that a new outlet was built in 1896.

One Brewster was allowed to testify for the plaintiffs that he was the mayor of the city in 1868–'69, that the Central-avenue sewer was constructed in 1869, and that to the best of his recollection the owners of property on that street entered the sewer at that time and paid the city the fees established by ordinance. To this evidence the defendants excepted, on the ground that the city records were the best evidence.

Subject to exception, the plaintiffs were permitted to introduce evidence that on several occasions prior to July 18, 1901, when the conditions were the same as on that date, the Central-avenue sewer was clogged with hair, pieces of hide, sand, and mud, and that it had to be frequently flushed out to keep it from being stopped up, as tending to show a faulty condition of the sewer. Subject to exception, the plaintiffs were permitted to introduce evidence that the basements of buildings connected with the sewer on Washington street, which were substantially on the same level as the plaintiffs' store, were frequently flooded in time of heavy rains prior to July 18, 1901, and on one occasion since, as tend-ing to show the incapacity of the sewer on Central avenue and below the junction of Washington street and Central avenue to carry off the water discharged into it; and that on the occasions prior to that date notice of such floodings was given to the city, to show that it had notice of the defective condition of the sewer. The evidence did not show that the basement of the plaintiffs' store had ever before been flooded from the sewer. The defendants also excepted to evidence that on one occasion before the plaintiffs' damage the basement of the third building above the plaintiffs' store was flooded. At the close of the plaintiffs' evidence the defendants moved for a nonsuit. The motion was denied, and the defendants excepted.

The defendants requested instructions based upon the theory

that the city was not liable for damages arising from defects in the original plan of construction of the sewers. Subject to exception, the requests were denied, except so far as covered by the following part of the charge: "The city is required to exercise ordinary care to properly construct and to keep in proper repair such sewers as they see fit to build and maintain. If the city, by negligently constructing this sewer, or by negligently keeping it in repair, or by negligently suffering it to get stopped up, caused a positive invasion of the plaintiffs' private property by collecting and throwing upon it, to the plaintiffs' damage, water or sewage which would not otherwise have flowed or found its way there, and the plaintiffs were without fault, the city is liable. If the sewer as originally constructed was adequate and sufficient for the purpose for which it was then designed and used, and subsequently the city turned into it a much larger amount of water and sewage than was contemplated at the time of its construction, thereby overtaxing the sewer and causing water and sewage to flow back upon the premises of the plaintiffs, and they were without fault, the city would be liable after notice of such inadequacy of the sewer and neglect to remedy it."

*William F. Nason* and *John S. H. Frink*, for the plaintiffs.

*John Kivel* and *George T. Hughes*, for the defendants.

WALKER, J. For the purpose of showing when the plaintiffs' drain was connected with the sewer on Central avenue, and that it was rightfully so connected, Brewster was allowed to testify that according to his recollection the connection was made in 1869 and that the license fee therefor was paid. However defective his memory may have been, his testimony tended to prove these facts. Its lack of positiveness affected only its weight. It purported to be original evidence. It did not disclose other or better evidence for which it was a substitute. Hence it could not be excluded on the ground that the records in the city clerk's office might furnish information on the same subject. *Hoitt* v. *Moulton*, 21 N. H. 586, 590; *Greeley* v. *Quimby*, 22 N. H. 335. The witness did not attempt to state facts which were necessarily matters of record, or which his testimony disclosed were recorded. His testimony did not presuppose or assume the existence of other evidence upon the same subject of a higher degree of authenticity. He merely stated from his recollection certain facts whose existence did not depend upon written evidence thereof. *Hall* v. *Ray*, 18 N. H. 126; *Putnam* v. *Goodall*, 31 N. H. 419, 424; *Pierce* v. *Richardson*, 37 N. H. 306, 314. As it does not appear that the connec-

tion of the drain with the sewer in 1869 and the payment of the established fee were evidenced by written documents recorded in the city clerk's office or elsewhere, no error was committed in the admission of parol evidence to prove those facts. *Wayland* v. *Ware*, 104 Mass. 46, 51; 1 Gr. Ev., *ss.* 82–89. However that may be, there is a legal presumption that after so great a length of time payment of the license fee was properly made. *Barker* v. *Jones*, 62 N. H. 497; *Olcott* v. *Thompson*, 59 N. H. 154.

While it has been generally regarded as a necessary rule or principle of proof that evidence must be confined to the point in issue (1 Gr. Ev. *s.* 51), in order to avoid the inconvenience of trying immaterial, collateral issues, it is equally true that evidence having a legal tendency to establish a material point in controversy is admissible, unless it falls within some of the rules of exclusion which are based upon considerations of policy. The defendant contends that evidence that the sewer at other times had discharged its contents, or a part of it, into cellars on Washington street was not competent to show that the overflow into the plaintiffs' cellar on another branch of the sewer was due to the same cause, of which the defendant had received ample notice. To ascertain the competency of the evidence, it is necessary to determine whether there was any controverted fact upon which it had a logical bearing. One of the controverted points in the case was the capacity or incapacity of the sewer to carry away the waste matter, both solid and liquid, which the defendant permitted it to receive. Was it capable of properly doing the work which the defendant imposed upon it? That was one of the questions tried; and to prove their contention upon that question, the plaintiffs were not confined to evidence of the overflow into their premises. The incapacity of the sewer might be shown by instances of similar occurrences at other points and at other times. Such evidence had some tendency to prove the plaintiffs' theory; while the defendant was at liberty to neutralize its effect by showing that the injury in those instances was due to other causes than the incapacity of the sewer for the work it was expected to do. The plaintiffs' evidence might thus be shown to be of very little importance, but its legal relevancy cannot be doubted. It showed that something interfered with, or prevented, the reasonably successful operation at the sewer at those times; and it was not an unreasonable inference that the cause of the trouble was the turning into the sewer of a disproportionate quantity of sewage and insoluble matter. In other words, it tended to show that the capacity of the sewer was too small, or what amounts to the same thing, that there was mismanagement in its use. In the absence of any change in its size, location, or use, it could not be said as a

matter of law that the existence of this fact was not legal evidence that it would be likely to produce a similar result at the plaintiffs' store. *State* v. *Knapp*, 45 N. H. 148. Evidence of this character is admissible upon the ground that the operation of physical agencies is often satisfactorily shown by experiments or actual occurrences under circumstances similar to those disclosed by the case on trial. *Darling* v. *Westmoreland*, 52 N. H. 401; *Gordon* v. *Railroad*, 58 N. H. 396; *Lewis* v. *Railroad*, 60 N. H. 187; *Cook* v. *New Durham*, 64 N. H. 419, 420; *Shute* v. *Company*, 69 N. H. 210. The similarity of the circumstances, or the similarity of the facts offered in evidence as compared with those actually on trial, must be clearly established in order to make the logical or legal sequence apparent. If no probative relation exists between the experimental evidence offered and the litigated facts, the evidence must be rejected. And this is understood to be the defendant's claim with reference to the plaintiffs' evidence of damage occasioned by the sewer on Washington street.

From the evidence, it was competent for the jury to find that the plaintiffs' damage was due to the fact (1) that the sewer on Washington street, at or below the junction, was not large enough to carry away the water, or (2) that debris clogged up the sewer on Central avenue, or (3) that the Washington-street sewer below the junction was similarly obstructed, or (4) that all these causes were operative at the same time. But the court cannot say that any one of these causes alone produced the injury at one time and not at another time. Hence, if upon any one of the theories the evidence excepted to had a legal bearing, the plaintiffs were entitled to the benefit of its admission.

The incapacity of the sewer and the debris put into it may have been so related in causing an overflow or set-back as to manifest their effect at one time on one street and at another time on another street. It is not improbable that the accumulation of debris at the junction, produced in part by the smallness of the sewer, may have been so located as to impede the flow in one branch more than in the other, and thus to produce an overflow upon one branch of the system alone. As a practical matter, it may not be easy to say how a quantity of leather, waste, and dirt put into the sewer of insufficient capacity would concentrate and constitute an obstruction, or how or where the obstruction would manifest itself by producing a stoppage in the flow of the water. That it would not necessarily have the same effect upon both branches, though located on the same level, is apparent. It might produce an overflow or set-back in one and not in the other. Hence the flooding of cellars on Washington street might be produced by the same defects in the sewer in conjunction with solid

matter allowed to accumulate in it, which at another time would produce a flooding of the cellars situated on the other branch of the sewer. The defendant's negligence in the construction and care of the sewer might be the same in both instances; and evidence of its effect on one branch of the system at one time would have some tendency to show that it was the proximate cause of a similar effect on the other branch at another time. As the evidence may have had some legitimate probative bearing, the question of its admissibility presents only a question of remoteness, which was properly determinable by the trial court.

The defendant's attempt to demonstrate with mathematical certainty that an obstruction below the junction would produce the same effect on both branches, because they were on substantially the same level, and consequently that evidence of floodings on Washington street when no such effect was observed on Central avenue was not competent to prove that the same cause would produce the same result at another time on the latter street, assumes that the obstruction was the same in both instances, or that the accumulation of debris, whatever its character as to size and location, would necessarily have the same effect upon the flow of water in the sewer at all times. This erroneous assumption deprives the argument of the conclusive character it was intended to have. The negligence may have been the same, while its manifestation may have been different at different times.

For similar reasons, evidence of the damage suffered at a point above the plaintiffs' store on Central avenue was admissible. The obstruction producing that damage may have existed above the plaintiffs' store; and if so, while it would not injure the plaintiffs, its existence there would be evidence of the defendant's negligence in its management of the sewer, not alone at that point but at all points in the system where similar obstructions were formed.

Upon the plaintiffs' evidence, it was competent for the jury to find that the defendant had actual notice or knowledge before the date of the plaintiffs' damage that the sewer was of insufficient size and was liable to be clogged up by refuse matter which was allowed to accumulate in it. It knew of the defect and the results that might reasonably be apprehended. It is therefore unnecessary to consider whether it might not also be chargeable constructively with notice. As the plaintiffs' evidence tended to show that the defendant had notice that the capacity of the sewer was being overtaxed, and that obstructions were allowed to accumulate therein, the natural effect of which was to cause the damage suffered by the plaintiffs, the defendant owed the duty to the plaintiffs to use reasonable care under the circumstances to pre-

vent such damage. It does not appear that there was any evidence to show, or that the plaintiffs claimed, that their injury was caused by negligence or carelessness in the original plan of the sewer. Their contention was that it was improperly and negligently constructed and managed, and was not a safe and expeditious conduit for the sewage which the defendant sought to dispose of by that means. Whether the original plan was adequate for the sewage needs of the city as they existed when it was adopted, was not material. The important question was whether the use that the defendant attempted to make of it, at or about the time of the overflow of the plaintiffs' premises, was a reasonable use in view of its size and construction, and in view of the right of the plaintiffs and others similarly situated to a reasonable enjoyment of their property. *Franklin* v. *Durgee*, 71 N. H. 186. The cause of the injury was not the existence of the sewer opposite the plaintiffs' premises, but the defendant's negligent use and management of it. The defendant's motion for a nonsuit was properly denied.

In the absence of evidence that the original plan of construction was defective, the defendant was not entitled to have the jury instructed upon that point as requested. The plaintiffs complain, and base their right to recover upon the fact, that the defendant permitted an improper use of the sewer. The same idea is expressed when it is said that it was not large enough for the uses to which it was put. The original plan of the sewer and its construction in accordance with that plan under legislative license (G. S., *c.* 44, *s.* 9) may have presented no defect. But freedom from error in that respect would not excuse the city for the negligence of its officers and agents in their subsequent care and management of the sewer. In *Rowe* v. *Portsmouth*, 56 N. H. 291, it was held that in maintaining a public sewer a city is bound to use that degree of care and prudence which a discreet and cautious individual would use if the whole loss or risk was to be his alone. The case renders unnecessary a discussion of the liability of a city or town, which builds a sewer under legislative authority, for defects in the plan adopted. When, having constructed a sewer, it connects it with other sewers and drains, overtaxing its capacity, and allows insoluble materials to accumulate in it and obstruct the flow of the water, causing it to flow back upon private property, its liability for the resulting damage does not differ from that of an individual, who so unreasonably manages his property as to cause damage to the adjoining property of his neighbor. The fact that it is a public corporation, performing certain public duties, does not exempt it from liability for negligence when performing a work not imposed upon it as a public agent, but voluntarily assumed by it under a legislative license. Having undertaken the

construction and management of a system of sewerage for the local accommodation and convenience, its duties to individuals liable to be damaged thereby is measured by the same rule of ordinary care and prudence under the circumstances as would be applied if it were a private business corporation, partnership, or individual engaged in the same work. *Gilman* v. *Laconia,* 55 N. H. 130, 131; *Rowe* v. *Portsmouth,* 56 N. H. 291, 293; *Clark* v. *Manchester,* 62 N. H. 577, 579; *Rhobidas* v. *Concord,* 70 N. H. 90, 107, 109, 110; *Franklin* v. *Durgee,* 71 N. H. 186; *Bates* v. *Westborough,* 151 Mass. 174, 182; *Barton* v. *Syracuse,* 36 N. Y. 54; *Ashley* v. *Port Huron,* 35 Mich. 296. The instructions to the jury, therefore, afford the defendant no tenable ground for exception.

*Exceptions overruled.*

All concurred.