Strafford,
No. 4219.

JOHN MITCHEL & a. v. DOVER

Argued September 1, 1953.

Decided September 22, 1953.

*McCabe & Fisher* and *John D. McCarthy* (*Mr. McCarthy* orally), for the plaintiffs.

*James M. Jackson,* city solicitor (by brief and orally), for the defendant.

GOODNOW, J.   The defendant first asserts that by its exception to the orders of mistrial made by the Presiding Justice after the close of the evidence, the cases are transferred to this court for a determination of the facts.   With this contention we are not in agreement.   The general ground upon which a mistrial is ordinarily declared by the Trial Court is the existence of some circumstance which indicates that justice may not be done if the trial continues to a verdict.   The result of such an order, whether made after the close of the evidence or at an earlier point in the trial, is the discharge of the trier of facts, be it a jury or the court, without a determination of any facts, and a later trial of the case *de novo* before another jury or another Justice of the court.   Since the establishment of our Supreme and Superior Courts in 1901, it has been clearly recognized that questions of fact arising in the course of trials in the Superior Court are to be decided there. *Romano* v. *Company,* 95 N. H. 404, 406, and cases cited.   While questions of law raised during the first trial may be transferred to this court for determination in advance of the new trial (see *Lavigne* v. *Nelson,* 91 N. H. 304, 309, and cases cited), the questions of fact involved in a decision of the merits are reserved exclusively for the Superior Court.   The case of *Perkins* v. *George,* 45 N.H. 453, relied on by the defendant, involved an appeal from a probate court and is not in point.   That appeal transferred the entire subject matter of the appeal, including the determination of questions of fact by trial *de novo,* to the Supreme Judicial Court which then had, at its trial sessions, the same jurisdiction as is now reserved to our Superior Court, where it was treated as an original proceeding.   *Brown* v. *Jewell,* 86 N. H. 190, 192.

The decision of the Trial Court, made upon his own motion, that he should disqualify himself occurred after his denial of the

defendant's motions for nonsuits and the completion of the testimony. No reason was assigned for his decision nor does the record indicate any. Under these circumstances, it must be assumed that his disqualification existed from the commencement of the trial although evidently not apparent to him until its completion. Whether his disqualification was such as to render his acts void or merely voidable (see *Moses* v. *Julian,* 45 N. H. 52; *Fowler* v. *Brooks,* 64 N. H. 423), the effect of his decision was the voiding of all orders, other than merely formal ones, made by him in connection with the case, including his denial of the defendant's motions for nonsuits. While this would normally leave the defendant without an exception for our consideration at this time, it is thought expedient to now pass upon the issues raised by the defendant's motions as if transferred here without ruling.

An essential element of proof in an action to recover damages caused by the backing up of sewage from a public sewer through a private drain is that the drain was rightfully connected with the sewer. *Rowe* v. *Portsmouth,* 56 N. H. 291, 297; *Roberts* v. *Dover,* 72 N. H. 147, 149. While none of the circumstances under which the plaintiffs' drains were connected with the public sewer are in evidence on which to base a finding as to the rightfulness of the connection, it does appear that they had been connected more than five years before the event in litigation and that during that period, employees of the defendant had entered the plaintiffs' premises several times in connection with work on their drains and the backing up of water through them from the public sewer. On these occasions, the city, on the plaintiffs' complaints, had undertaken to clear any stoppage of the public sewer in order to prevent the flooding of the plaintiffs' premises through their drains. In the complete absence of evidence that the drain connections were wrongfully made or maintained by the plaintiffs, it is logical to infer and is therefore findable, from these previous acts of the defendant, that the connection of the plaintiffs' drains with the public sewer was rightful. The defendant's contention that evidence was lacking to support this element of the plaintiffs' cases is without merit.

In support of its motions for nonsuits, the defendant further contends that in its management of the Central Avenue sewer it had no notice of any such use of it as would render it inadequate and require the city, in the exercise of due care, to correct the situation.

The evidence tended to show the following facts. The line of sewer now in question starts on Orchard Street at a tannery. From this point, the sewage flows easterly in Orchard Street to a line flowing south in Central Avenue. The Central Avenue line, in turn enters a line flowing east in Washington Street. The diameter of the pipe in Orchard Street is ten to twelve inches, in Central Avenue it is twenty-four inches and in Washington Street it is four feet. The premises of the plaintiffs are located on the westerly side of Central Avenue between Washington and Orchard Streets and their drains connect with the sewer line in Central Avenue. Within the four years previous to the occasion complained of, the sewer on Central Avenue had, for reasons not disclosed by the evidence, failed "several times" to carry off the sewage with the result that water had backed into the premises of the plaintiffs. The defendant was aware that the plaintiffs' drains connected with the public sewer and on each occasion, its employees remedied the situation in the sewer before the water had caused material damage to the plaintiffs. Within a year before February 22, 1950, the Orchard Street sewer had twice been blocked and each time, the cause had been found to be pieces of hide, hair and other material which had been discharged into the sewer from the tannery. When the first of these two stoppages occurred, the city official responsible for the sewers visited the tannery and found that a screen, of a removable type, was maintained by the tannery at the outlet of its vat which, if in place, would prevent hide and hair from entering the sewer. On that occasion, the defendant's agent learned that the screen was sometimes removed when employees of the tannery were in a hurry to empty the vat, causing a quantity of hide and hair to enter the sewer. From this experience, the defendant discovered that the hide and hair "press together," that "it would make a dam pretty quick" and that the sewer "could be blocked in a very short time if all that material came through." The defendant's agent knew that the emptying of a quantity of the hide and hair into the sewer could cause not only the Orchard Street sewer but also the larger Central Avenue sewer to block up. He took no action to prevent the future dumping of hides and hair into the sewer other than to ask the tannery "to keep the screen in." On February 22, 1950, the defendant was notified that water was entering the plaintiffs' premises. Investigation disclosed that hides, hair and other materials from the tannery had blocked the Central Avenue sewer

south of the point at which the plaintiffs' drains connected with it, causing water and sewage to back up into the basements of the plaintiffs' premises.

The duty owed by a municipality to persons liable to be damaged by its operation of a sewerage system for the public benefit is that of ordinary care and prudence under the circumstances. *Roberts* v. *Dover,* 72 N. H. 147, 153; *Rowe* v. *Portsmouth,* 56 N. H. 291. Compliance with such a duty requires the anticipation of those matters reasonably to be foreseen. The defendant knew that materials from the tannery were occasionally emptied into the Orchard Street sewer, that the clogging quality of this material was such that it could block the larger Central Avenue sewer into which the Orchard Street sewer flowed and that the natural effect of such an obstruction in the Central Avenue sewer would be to cause the damages suffered by the plaintiffs. The only action taken by it to prevent the entrance of improper materials from the tannery was to repeatedly request that the screen be kept in place although the removal of it had apparently occurred on at least two occasions within the year previous to the event in controversy in spite of such requests. Whether the defendant, in the exercise of a reasonable degree of anticipation, should have been aware of the inadequacy of the Central Avenue sewer which did in fact develop and should have taken further action to prevent the improper use of it are questions which are not so clearly established by the evidence as to be determinable by this court as a matter of law. The defendant's contention that non-suits should be ordered on this ground cannot be sustained.

Nor can the defendant avoid liability on the grounds that the tannery's action in emptying improper materials into the sewer was beyond its control. A sewerage system constructed by a municipal corporation is its property and its right to regulate and control the use of it is a necessary incident of its ownership. 64 C.J.S., Municipal Corporations, ss. 1802, 1805. The tannery's right to empty its sewage into the public sewer was not an unlimited one but was subject to the control of the defendant. Whether the defendant's failure to regulate the tannery's use of the sewer more strictly or by some means other than that employed constituted negligence on its part is a question of fact for the Trial Court.

*New trial.*

All concurred.