Hillsborough,
No. 5470.

MILDRED M. GOSSLER *& a.* v. MANCHESTER.

Argued April 5, 1966.
Decided July 15, 1966.

*King, Nixon & Christy* ( *Mr. David L. Nixon* orally ), for the plaintiffs.

*J. Francis Roche*, city solicitor ( by brief and orally ), for the defendant.

*Sulloway, Hollis, Godfrey & Soden* and *Martin L. Gross* ( *Mr. Gross* orally ), for Edith Boisvert, amicus curiae.

WHEELER, J. These are actions in case for personal injuries brought by Mildred M. Gossler against the city of Manchester, arising out of injuries sustained when she fell on a city sidewalk. Her husband Harry A. Gossler brings an action for consequential damages.

The defendant filed a motion to dismiss both actions as a matter of law on the grounds that maintenance of a highway is a governmental function on its part in the performance of which there can be no liability. The motions were granted and all questions of law raised thereby were reserved and transferred by *Grimes,* J.

The plaintiff concedes that applying existing law in this juris-diction the defendant would be entitled to prevail. *Reynolds* v. *Nashua,* 93 N. H. 28; *Shea* v. *Portsmouth,* 98 N. H. 22; *Opinion of the Justices,* 101 N. H. 546, 548; *Hermer* v. *Dover,* 106 N. H. 534.

We are here urged to re-examine existing law and throw off the ancient shackles of governmental immunity prospectively and retrospectively as to the plaintiffs at bar. All counsel by their exhaustive research and comprehensive briefs have greatly aided us in considering this proposal.

The rule against municipal liability for torts has been the subject of thousands of pages of learned dissertations, and the flood of legal articles and comments castigating the reasoning embodied in the justification of its continuance continues unabated. Typical of judicial comments against perpetuating the rule of governmental immunity is the statement found in *Hargrove* v. *Town of Cocoa Beach,* ( Fla. 1957 ) 96 So. 2d 130 where the court in striking down municipal immunity declared: " To con-tinue to endow this type of organization [ the city ] with sovereign divinity appears to us to predicate the law of the Twentieth Century upon an Eighteenth Century . . . anachronism. Judicial consistency loses its virtue when it is degraded by the vice of injustice. " *Id.,* 133. See also, Borchard, Governmental Responsi-bility in Tort, 34 Yale L. J. 1, 12, 22; 36 Yale L. J. 17; 29 N.Y.U. L. Rev. 1321.

It is agreed by most legal historians that the governmental immunity rule had its inception in *Russel* v. *Men of Devon,*

100 Eng. Rep. 359 ( 1788 ). There recovery was denied for damages to the plaintiff's wagon caused by a defective bridge for the reason as therein stated, "[I]t is better that an individual should sustain an injury than that the public should suffer an inconvenience. " *Id.*, 362. This rule early became engrafted upon the common law of this state and Massachusetts. *Farnum* v. *Concord*, 2 N. H. 392 ( 1821 ); *Mower* v. *Leicester*, 9 Mass. 247 ( 1812 ).

"[W]hile the United States, and various state governments have through legislative action, accepted in some measure the principle of governmental tort liability, the rule of municipal immunity, except as limited by the qualifications and distinctions [Note par. 3 ] continues to be applied by the overwhelming majority of the courts of this country. " 60 A.L.R. 2d 1193, 1199, 1200.

This immunity is generally considered to rest upon three sources: "( 1 ) the supposed immunity of the sovereign from suit, which is extended to the municipality as representative or agency of the sovereign, ( 2 ) the idea that it is more expedient that scattered individuals suffer than that the public in general be inconvenienced, and ( 3 ) the considerations of the public policy involved in the theory that governmental agents will perform their duties more effectively if not hampered by tort liability. " Annot. 60 A.L.R. 2d 1193, 1199. For a collection of cases upholding and abrogating sovereign immunity see: The Changing Concept of Sovereign Immunity, 1 Personal Injury Liability, Institute of Continuing Legal Education, 305, 309; 48 Minn. L. Rev. 265, 287; 6 Ariz. L. Rev. 102 ( 1964 ); 31 Journal of the American Trial Lawyers Association 186.

In some jurisdictions where the courts have abolished governmental immunity the legislatures have responded quickly with legislation either reinstating immunity or limiting the amount of recovery and the time in which an action may be brought. In Illinois after *Molitor* v. *Kaneland Community Unit Dist.*, 18 Ill. 2d 11, abolished immunity as to school districts, the Legislature passed a statute limiting recovery against school districts to $10,000 and imposing a short statute of limitations. Ill. Anno. Stat. 1962, ch. 122, pars. 821-831.

After California abolished immunity in *Muskopf* v. *Corning Hospital District*, 55 Cal. 2d 211 ( 1961 ), the Legislature promptly enacted a statute suspending the effect of the decision in *Muskopf* and re-enacted the doctrine of governmental immunity

from tort liability for a period of 91 days after the adjournment of the 1963 Legislature. Cal. Sess. Laws 1961.

Minnesota followed by abolishing school district immunity in *Spanel* v. *Mounds View School District*, 264 Minn. 279 ( 1962 ). The Legislature responded by enacting the " Tort Liability Act " Laws 1963, Chap. 798, which provides for certain specific exceptions and a maximum recovery.

The results of abrogating governmental immunity and opening wide the doors of the city treasury to unlimited tort claimants have been nearly catastrophic financially to some communities. For example, *Muskopf, supra,* resulted in a verdict of $2,500,000 of which the State appropriated $750,000; $275,000 against Newark, N. J. for negligence of a police officer; $358,000 claimed against Huntington Beach, Calif; $259,000 against Stockton, Calif.; $600,000 against Atlantic City. 28 Nimlo Municipal Law Review, 1965 ed. 448.

Amicus curiae after examination and review of some fifty-three cases in this jurisdiction correctly points out that this court has itself recognized that the cases are not always reconcilable. *Rhobidas* v. *Concord*, 70 N. H. 90; *O'Brien* v. *County*, 80 N. H. 522.

In *Rhobidas, supra,* 109 *Peaslee,* J., after an extensive review of the cases concluded: " A careful consideration of these cases must lead to the conclusion that there is no general rule by which the common-law liability of towns has been ascertained. That there is such liability in certain cases is well established in this state . . . What cases will or will not come within this class may be determined, to some extent, by a process of elimination. " These cases were put into three general classifications sustaining governmental immunity ( 1 ) for the improper discharge of a purely governmental function. *Eastman* v. *Meredith*, 36 N. H. 284; ( 2 ) for neglect to perform duties imposed upon them without their consent, *Sargent* v. *Gilford*, 66 N. H. 543; ( 3 ) and for the acts of officers whose powers and duties are so fixed by the Legislature that the town cannot control or direct their actions. *Ball* v. *Winchester*, 32 N. H. 435.

Our Legislature by the enactment of certain statutes creating liability as to certain purely governmental functions has indicated an awareness of the doctrine of governmental immunity and a desire that it be otherwise continued. See RSA 245:20 ( change in grade of highway ); RSA 247:17 ( bridges, culverts, sluiceway,

or dangerous embankments ); RSA 412:3 ( immunity waived to extent of insurance coverage ); RSA 247:9, 10 ( notice of insufficiency ). See *Cushman* v. *Grafton*, 97 N. H. 32; *Consoli* v. *Insurance Company*, 97 N. H. 224, 226.

Congress recognized the inequities which existed in this doctrine by the enactment of the Federal Tort Claims Act of 1946, 28 U.S.C., ch. 171, *par.* 2671-2680. See Pound, The Tort Claims Act: Reason or History ? 30 NACCA L. J. 404.

We are urged that since the doctrine of immunity is a court-made rule it should therefore be abrogated by the court. However, as previously noted, in those jurisdictions which have abrogated the doctrine of immunity, their respective Legislatures have had some second thoughts on the subject to the extent of enacting certain statutory modifications and limitations. While the courts may have the power to abrogate immunity, they do not hold the purse strings, have the power to levy taxes or otherwise provide funds to meet the resulting liability. They do not have the power to limit the amount of recovery or to force contribution from the State or some other agency. One contention of the proponents of abrogation is that communities can secure protection from financial loss through insurance. But we think this is only a partial answer. It is common knowledge that insurance premiums are based on loss record experience. Some protection perhaps could be obtained to protect a community against a catastrophic verdict as in *Muskopf, supra,* but what the premium cost would be and whether any company would continue such insurance is all in the realm of speculation.

We recognize that the complexities of modern government may from time to time require some relaxation of our rule of governmental immunity as various situations and conditions present themselves. There is much persuasiveness in the arguments of the proponents of the abrogation of governmental immunity. But as has been said: " The harsh language thus used adds nothing of persuasiveness. It rather serves to emphasize the impropriety of courts of law assuming to base their decisions on their own concept of ' sociological enlightenment' rather than await legislative reaction to such claimed modern advancement. " *Maffei* v. *Kemmerer*, 80 Wyo. 33, 53.

Our cities and towns are all now operating financially on the basis of our long-established precedents. Urgency, expediency, necessity or logic do not now require that we strike down by

judicial fiat the barriers of governmental immunity and thrust upon them a potentially catastrophic financial burden. " Whether contemporary expansions of the field of governmental activities demand a corresponding expansion of the scope of municipal liability for the manner of performing public duties, is a matter for legislative rather than judicial determination. " *Harkinson* v. *Manchester*, 90 N. H. 554, 555.

The order is

*Exceptions overruled; judgment for the defendant.*

LAMPRON, J., concurred specially; KENISON, C. J., dissented; the others concurred.

LAMPRON, J., *concurring*: I agree with all the characterizations of our present law of municipal immunity contained in the dissenting opinion of *Kenison*, C. J. However the majority opinion has pointed out the dire results which have accompanied a sudden and complete abrogation of this immunity by court decision and the role Legislatures have played in mitigation of those results. Hence I share the view of the majority that this is a matter for legislative consideration. However, in the absence of remedial action by the Legislature, I would be inclined to consider a partial or complete abrogation of this immunity by court action.

KENISON, C. J., *dissenting*: Every member of this court knows " that municipal immunity is on the wane elsewhere, has been subjected to a barrage of criticism and has been abolished . . . " in many jurisdictions by judicial decisions having prospective effect only. *Hermer* v. *Dover*, 106 N. H. 534, 536; Annot. 60 A.L.R. 2d 1198. Furthermore our classification of particular municipal functions as governmental with immunity on the one hand, and proprietary with liability on the other hand, is confused, inconsistent and difficult, so that our rules for solving these problems are " as logical as those governing French irregular verbs. " *Weeks* v. *Newark*, 62 N. J. Super. 166, 178, *aff'd* 34 N. J. 250; Prosser, Torts 1005 ( 3d *ed*. 1964 ). This court has not granted immunity to charities and there is no more reason to retain it for municipal corporations. *Welch* v. *Hospital*, 90 N. H. 337.