288 A.2d 258.

JOSEPH ROTELLA *et al. vs.* DAVID R. McGOVERN,
*City Treasurer.*

MARCH 7, 1972.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Powers, J. Shortly after dinner on the evening of September 13, 1965, Joseph Rotella and his wife, Rocca Rotella, detected an odor in their home and, investigating, discovered what appeared to be water gushing into the basement. Because the water was rising to the level of the oil burner, Joseph called the fire department while neighbors called the sewer department.

Both departments arrived shortly after receiving the calls and the superintendent of sewers advised the men from the fire department that he would take care of the problem. Investigation disclosed that what was flowing into the Rotella basement was sewerage from the sanitation main in Texas Avenue on which street the Rotellas reside. By removing the manhole cover over the sewer main, the emergency crew from the sewer department was able to determine that there was an accumulation of debris which caused the sewer to block and back up.

This debris consisted of paper, rags, wire and other substances which the sewer emergency crew removed, thus clearing the blockage. Another crew was assigned to pumping the water out of and otherwise cleaning up the Rotellas' basement. This work took some two days and included the removal and disposal of personal property of the Rotellas which had been rendered useless.

The Rotellas filed a claim with the City Council of the City of Providence where they maintain their home. When the city council failed to act thereon, they commenced a civil action in the Superior Court. The case was tried to a Superior Court justice without a jury, solely on the question of liability. At trial, plaintiffs clearly established the causal connection between the damage to their basement and the retroflux of sewage occasioned by the blocking of the main.

It was also established that the city of Providence has some 467 miles of sewer lines with 20,373 manholes and

that except for some areas of the city where there is no grade, the city never inspects its sewer lines. The deputy director of public works, who is also chief of the engineering office, explained how, ordinarily, sewer mains are laid so that a gravity flow will keep them clear. It is undisputed that Texas Avenue has a good grade, hence it is never inspected.

The engineer also explained that when private property is to be tied into a sewer main, such work must be done by a licensed drain layer who is required to obtain a permit from the city before the work can be done. It was his testimony that the record showed that no such permit had ever been obtained in connection with the Rotella home.

Joseph Rotella testified that he had contracted to have the house built and, in connection therewith, engaged a plumber who hired a drain layer. He also testified that the house was built in 1954, at which time, according to the deputy director of public works, the sewer main had been in Texas Avenue for some 20 years.

After the parties had rested and the trial justice announced that he would reserve decision, his attention was called to the fact that there had been similar damage to two other homes on Texas Avenue by reason of the backflow of the sewer on September 13, 1965. The owners thereof had also brought actions which were pending. On stipulation by counsel for plaintiffs and the city solicitor, the trial justice permitted consolidation of the two pending cases with that of the instant case,[1] for decision on the question of liability. The stipulation was on agreement that all ultimate facts as to liability were identical in the three cases except that the city did not contend that con-

---

[1]These cases are: John Chiriche et al. v. David R. McGovern, City Treasurer, C.A. No. 68-732 and Anthony Piccirilli et al. v. David R. McGovern, City Treasurer, C.A. No. 68-734.

nections to the sanitary sewer by Chiriche and Piccirilli were made without permits.

Thus consolidated, the trial justice rendered a decision in which he found the city to be liable in damages in all three cases. So deciding, he held that in the operation of its sewer system the city was performing a proprietary function; that the backflow into the plaintiffs' basement was occasioned by the sanitary main in Texas Avenue clogging as a result of the city's negligence in failure to make periodic inspections and, in the case of the Rotellas, that the assessment of their property and the payment of taxes thereon over the years constituted ratification by the city of what may have originally been an unauthorized connecting of the Rotella home with the Texas Avenue main.

An order was entered to this effect and the three cases were then consolidated for a hearing on damages. In the case of the Rotellas, damages were assessed at $2,536.17 and judgment was accordingly entered.

Similarly, judgments were entered for plaintiffs in the cases of Piccirilli and Chiriche for $2,100 and $1,039.75, respectively. From these judgments, the city seasonably appealed to this court.

Although the question of whether the operation of its sewer system constitutes a proprietary function was involved in the trial justice's decision in each case, the city makes no contention that his ruling in this regard is contrary to law. Its failure to do so may very well have been prompted by the holding of this court in *Prete* v. *Cray*, 49 R. I. 209, 141 A. 609 (1928) wherein it was held that a municipality, permitted but not required to maintain a sewer system, acts in its corporate and not its governmental

capacity in maintaining such a system. *See also King* v. *Granger,* 21 R. I. 93, 41 A.1012 (1898).[2]

In any event the city did not brief the point in its appeal and, in such circumstances, is deemed to have waived it. *Clarke* v. *Sullivan,* 103 R. I. 177, 235 A.2d 668 (1967).

Taking as established that the defendant city was performing a proprietary function in the operation of its sewer system, it follows that the city is liable for damages resulting from the tortious acts of its agents or servants committed in connection with the operation of its sewer system. *Karczmarczyk* v. *Quinn,* 98 R. I. 174, 200 A.2d 461 (1964) and *Aldrich* v. *Tripp,* 11 R. I. 141 (1875).

Applying this rule, the trial justice found that the plaintiffs in all three cases were entitled to recover for the reason that occasional periodic inspection would reasonably tend to prevent blocking, and the city's failure in this regard was a breach of its duty to exercise due care. He based this on the undisputed evidence that in the then more than 30 years since the construction of the Texas Avenue sewer line, the line had never once been inspected.

The city does not contend that the rule applied by the trial justice is erroneous per se. Rather, it argues vigorously that there is no competent evidence to support the trial justice's finding that it was the city's negligent maintenance of its sewer system that was the proximate cause of the blockage with its resulting backflow into plaintiffs' basement

---

[2]In *Becker* v. *Beaudoin,* 106 R. I. 562, 261 A.2d 896 (1970) this court held that the common-law rule of sovereign immunity theretofore applicable to municipal and quasi-municipal corporations for the negligence of their servants in the performance of governmental functions would be abrogated as to causes of actions arising after June 30, 1970. *See* P. L. 1971, chap. 181, enacted as a consequence of our holding in *Becker.*

As a consequence of the foregoing, the distinction between governmental and proprietary functions ceases to exist for most practical purposes.

The cause of action in the instant case, however, arose in 1965 and therefore is governed by the common-law rule.

or cellars. The validity of this contention rests on the proposition that the only evidence of neglect by the city is its admission that very few sanitary mains are ever inspected, and that Texas Avenue main in particular had not been inspected since it was installed some 30 years prior to the September 13, 1965 incident. But this neglect, the city further argues, is not the breach of a duty which if performed would have prevented the blockage or clogging.

This is so, the city argues, because there is no indication as to when the blocking or clogging began, nor the length of time during which the wire, rags, paper, wood, and other debris were accumulating. Thus, it concludes, it is unreasonable to infer that occasional inspections of the sewer mains would have prevented the condition which led to plaintiffs' damage.

This contention to have persuasive force would require, it seems to us, a showing that it was the city's practice to make such inspections as would be reasonable in light of the pertinent circumstances. These would include the total miles of sewer mains involved, the number of manhole covers to be raised, and the extent of the work force necessary to a reasonable program of inspection. Admittedly the city has no duty to insure against such incidents as that of which the instant plaintiffs complain and it would be unreasonable to hold it to a program of inspections that would be economically prohibitive.

Here, however, there is a calculated policy, according to the superintendent of sewers, of foregoing inspections in favor of prompt service when a complaint is received.

Moreover, there is the testimony of the deputy director of public works that inspections are made where there is reason to anticipate trouble. This gives rise to the question as to when such inspections as are based on anticipated trouble become a duty so as to make such failure to inspect actionable neglect, assuming of course that the party alleg-

ing neglect can prove damages. Obviously, a sanitation sewer main, expertly installed and engineeringly designed to be self-cleaning, will, at some point in time, necessitate inspection for normal wear and tear and decreasing efficiency resulting from the very nature of its use. Stated more precisely, the duty to exercise due care in the maintenance of a sanitation sewer main may include the obligation to make reasonably periodic inspections when, by the passage of time, deterioration or obstructions are reasonably foreseeable. *Mitchel* v. *Dover*, 98 N. H. 285, 99 A.2d 409 (1953); *Talcott* v. *New York*, 58 App. Div. 514, 69 N.Y.S. 360 (1901) and see also *Portsmouth* v. *Mitchell Mfg. Co.*, 113 Ohio St. 250, 148 N.E. 846 (1925), where that court, quoting from *McCarthy* v. *Syracuse*, 46 N.Y. 194, states:

> " 'Where the obstruction or dilapidation is an ordinary result of the use of the sewer, which ought to be anticipated and could be guarded against by occasional examination and cleansing, the omission to make such examinations and to keep the sewers clear is a neglect of duty which renders the city liable * * *.' " *Id.* at 255, 148 N.E. at 847.

Here, it is an established fact that the Texas Avenue sanitary main had never been inspected from the day it was laid to the date of the retroflux complained of, a period of more than 30 years. This circumstance when viewed in connection with other established facts, persuades us that the trial justice's decision is not clearly erroneous.

These additional facts are that the city knew that " * * * kids open the manhole and throw stuff in there like a tub or a tire, railroad ties, barrels"; that when called in response to plaintiffs' complaint, two emergency crews consisting of ten men were required to remove the debris which had accumulated in the Texas Avenue main and that clearing the blockage consumed "two or three hours."

For the reasons stated then, the trial justice's decision

that the city was liable in damages cannot be faulted in the cases of plaintiffs *Chiriche* and *Piccirilli*.

In its appeal from the judgment entered in favor of the Rotellas, however, the city presses an additional assignment of error. This is that no permit was ever issued by the city which authorized these paintiffs to connect their house with the city sewer system. Without such permission the city argues, the Rotellas' status is that of a trespasser to whom no duty of due care is owed, citing *Previte* v. *Wanskuck Co.*, 80 R. I. 1, 90 A.2d 769 (1952).

It is apparent from a reading of the trial justice's rescript that the city made the same contention before him. In finding against the city on this issue, the trial justice acknowledged both the validity of the trespasser rule and the fact that from the records of the city's department of public works, it would appear that the Rotellas were never authorized by the city to connect their drain to the Texas Avenue main. However, he pointed out that the Rotella property had been assessed for taxes, which the Rotellas paid over the years since their house had been constructed. This being so,[3] he reasoned that by assessing the property and collecting the taxes assessed, the city was put on notice that the house existed and, being chargeable with this knowledge, it should have known that the house was connected to the city's sewer system. With this as his premise, he concluded, that by its failure to take any action for some 11 years during which plaintiffs had been assessed and paid taxes "the municipality has ratified the act of the [p]laintiff."

At the outset, we think that the trial justice was cor-

---

[3]There is in the record a stipulation by the parties tending to establish that taxes had been assessed and paid as found by the trial justice. This stipulation is not free from ambiguity but, in any event, the city does not challenge this finding and, in such circumstance, the trial justice's finding is assumed by us to be correct. *Clarke* v. *Sullivan*, 103 R. I. 177, 235 A.2d 668 (1967).

rect in inferring that by reason of its assessments and collections of taxes on plaintiffs' house, the city became chargeable with knowledge of the existence of the house. What is troublesome, however, is the trial justice's further inference that having knowledge of the house, the city was chargeable with knowledge that the house was connected to the sanitation sewer. Clearly, had the house been built and taxes assessed and paid thereon, prior to the installation of the Texas Avenue main, it would not necessarily follow that assessment and payment of taxes subsequent to the installation of the sanitation main would support an inference that the city was chargeable with knowledge that the house was connected with the sewer main in question.

With the building of the house some provision would have been made for disposal of sewerage by way of some septic facility, which plaintiffs presumably could have continued to use.

Here, however, the relevant circumstance is quite to the contrary. The Texas Avenue sanitation main became operational not later than 1932, and had been servicing the homes located on Texas Avenue for some 22 years at the time plaintiffs built their home. There is nothing in the record to indicate whether there are sanitation regulations which would require plaintiffs to use the existing public facility, but even if not so required, the probability that plaintiffs would make private provisions rather than tie into the existing main is so unlikely as to be illogical. Consequently, we think that the trial justice was warranted in concluding that the city had constructive knowledge that plaintiffs' home was tied into its Texas Avenue sanitation sewer main. *Mitchel* v. *Dover, supra.*

In reaching his decision the trial justice held, in effect, that in assessing and accepting payment of taxes for 11 years without taking any action against plaintiffs for what it now contended was a trespass, the city had "ratified"

plaintiffs' unauthorized connection. We assume that by his use of the word "ratified", the trial justice was saying that the city had sanctioned plaintiffs' unauthorized use of its sewer system. We are not prepared to go that far but neither do we think going that distance is necessary to sustain the thrust of the trial justice's holding, namely that plaintiffs are persons to whom the city owed a duty of due care.

It suffices, for that purpose, to hold that the city is estopped from raising as a defense to plaintiffs' cause of action, conduct of which it had constructive knowledge and made no protest for 11 years, although during that time it collected from plaintiffs taxes, some portion of which it allocated to the maintenance of the city's sewer system. *See Murphy* v. *Duffy,* 46 R. I. 210, 124 A.103 (1924).

For the reasons stated, the city's appeal in each case is denied and dismissed and the judgment in each case is affirmed.

*Marvin A. Brill,* for plaintiffs.

*Robert J. McOsker,* City Solicitor, *Steven S. Saber,* Asst. City Solicitor, for defendant.