Hillsborough,
No. 6307.

DAVID J. HURLEY AND TWENTY OTHER PLAINTIFFS

*v.*

TOWN OF HUDSON AND SUNLAND CORPORATION.

November 3, 1972.

*Hamblett, Kerrigan, LaTourette & Lopez* and *Francis G. Holland* (*Mr. Holland* orally) for the plaintiffs.

*McLane, Carleton, Graf, Greene & Brown* (*Mr. Arthur A. Greene, Jr.* orally) for defendant town of Hudson.

KENISON, C.J. The question for decision in this case is whether the doctrine of municipal immunity from tort will shield the defendant town from possible liability arising out of the allegedly improper approval by the town planning board of a subdivision plat of defendant Sunland Corporation. Plaintiffs initiated this action to compel both defendants to install a proper storm drainage system in the subdivision and to recover flooding damages caused by the absence of such a system. Defendant town of Hudson filed a motion to dismiss the action as to it on the basis of governmental immunity. The Trial Court (*Perkins,* J.) denied the motion, to which the town excepted, and the issue of the availability of the governmental immunity defense to the town in this case was reserved and transferred to this court.

The facts as presented in plaintiffs' petition will control the issue of the correctness of the trial court's denial of the town's motion to dismiss. In January 1963, Sunland Corporation submitted a subdivision plan for Alvirne Estates to the Planning Board of the Town of Hudson for approval. The

plan as submitted to the board lacked a system for storm drainage. Pursuant to the town's subdivision regulations adopted in accordance with the State subdivision law (RSA 36:19-29), the planning board approved the plan. Sunland Corporation thereafter proceeded to develop the subdivision according to its plan and without adequate drainage facilities. Plaintiffs, purchasers of certain lots within the subdivision, allege that their properties are subject to periodic flooding caused by the lack of a storm drainage system.

We are urged once again in this case to abolish the admittedly archaic and often inequitable doctrine of municipal tort immunity. In *Gossler* v. *Manchester,* 107 N.H. 310, 221 A.2d 242 (1966), we criticized the doctrine but a majority of the court refused to abolish it reasoning that such a ruling could have financially catastrophic results upon the municipalities and that the abolition of the rule was a matter for the legislature and not the courts, despite its judicial origin. Since the Florida Supreme Court first abrogated municipal immunity in *Hargrove* v. *Cocoa Beach,* 96 So. 2d 130 (Fla. 1957), at least eighteen other courts have followed its lead in striking down the doctrine, many since our decision in *Gossler.* Davis, Administrative Law Treatise *s.* 25.00, at 823 (supp. 1970); Prosser, Torts *s.* 131, at 985 (4th ed. 1971). The rule "has been repudiated repeatedly during the last decade." *Becker* v. *Beaudoin,* 106 R.I. 562, 566, 261 A.2d 896, 899 (1970). "As in the case of prenatal injuries, and strict products liability to the consumer, the sudden eruption of so many cases within so brief a period appears to leave no doubt that there is to be a radical change in the law." Prosser *supra* at 985. "Sovereign immunity from tort liability is on the run in state courts." Davis *supra.* In perhaps another five jurisdictions the doctrine has been largely terminated by statute. Prosser, *supra* at 986.

Most of the decisions abolishing governmental immunity have squarely faced the question of the propriety of the judiciary abrogating the rule, and most have concluded that they indeed have "not only the power, but the duty" to abolish the rule. *Molitor* v. *Kaneland Community Unit Dist.,* 18 Ill. 2d 11, 25, 163 N.E.2d 89, 96 (1959), *cert. denied,* 362 U.S. 968, 4 L. Ed. 2d 900, 80 S. Ct. 955 (1960). *See generally* Davis, *supra s.* 25.00, at 823-44 (supp. 1970). "It has been repeatedly

stated that the doctrines of sovereign and government immunity have been made by the courts and, when it appears that these rules were wrong when made and wrong currently, the courts should abolish the rule." *Evans* v. *Board of County Comm'rs,* 174 Colo. 97, 101, 482 P.2d 968, 970 (1971).

Recent cases have eliminated the risk of catastrophic judgments befalling the municipalities by establishing an effective date for the prospective rule change far enough in the future to give the legislature sufficient time to enact appropriate regulatory legislation. "It is our conclusion, then, that while the courts need not wait on action of the legislature to repudiate unsound or archaic doctrines, we should recognize that, in repudiating such doctrines by judicial action, it is incumbent upon the courts in appropriate circumstances to provide an ample period of time during which the legislature may provide for limitations consistent with the social and economic factors involved and for the regulation of assertions of the right." *Becker* v. *Beaudoin,* 106 R.I. 562, 571, 261 A.2d 896, 901 (1970); *accord, Evans* v. *Board of County Comm'rs supra.*

However, even those courts and legislatures which have abrogated the governmental immunity doctrine have for the most part retained governmental immunity for the performance of those functions variously called "discretionary", judicial, quasi-judicial, legislative or quasi-legislative. *E.g., Muskopf* v. *Corning Hosp. Dist.,* 55 Cal. 2d 211, 359 P.2d 457, 11 Cal. Rptr. 89 (1961); *Hargrove* v. *Cocoa Beach supra; Becker* v. *Beaudoin supra;* Federal Tort Claims Act, 28 U.S.C. s. 2680(a) (1964); Minn. Stat. s. 466.03(6) (1971). *See generally* Prosser, supra s. 131, at 986. The commentators have also generally recognized the necessity for retaining immunity in this sphere of activity, however difficult it may be to define the parameters of the concept. 3 Davis, *supra ss.* 25.00-.18 (1958, Supp. 1970); 2 Harper and James, Law of Torts s. 29.10, at 1641-42 (1956) and s. 29.11, at 291 (1968 Supp. to Vol. 2); 18 McQuillin, Municipal Corporations s. 53.24a, at 181 (3d ed. rev. 1963) and at 27-28 (Supp. 1971). "[A] complete and outright abolition of the doctrine of governmental immunity would seem to be of questionable social value, for example in its application to legislative, judicial, and discretionary activities . . . ." 18 McQuillin, *supra* at 181.

"A discretionary function exception is essential to a good system of law on governmental tort liability . . . ." Davis, *supra* s. 25.18, at 870 (Supp. 1970). We agree.

The law was settled in this State and elsewhere long ago that "municipal corporations are immune from liability for torts arising out of negligence in the performance of governmental functions." *Opinion of the Justices,* 101 N.H. 546, 548, 134 A.2d 279, 280 (1957). The very essence of the "governmental function" concept is the judgmental, "discretionary", legislative or judicial nature of the activity. *Elgin* v. *District of Columbia,* 337 F.2d 152 (D.C. Cir. 1964); *see Hermer* v. *Dover,* 106 N.H. 534, 215 A.2d 693 (1955). The well-considered reluctance in the past of some courts including our own to abolish governmental immunity in toto has sprung in large measure from the very real necessity of protecting governments from liability arising out of decision-making and policy determinations. 3 Davis, *supra* s. 25.11, at 482 (1958). We believe that a rational system of governmental liability must retain immunity for "governmental" or "discretionary" functions. Whether the legislature or this court ulitmately reconsiders the proper place for governmental immunity in this State, we believe that an exception will undoubtedly be retained for certain activities deemed "governmental" in the narrower sense.

The planning board's approval of the subdivision plan without adequate drainage facilities in this case is precisely the type of "discretionary," "governmental," or "quasi-judicial" decision which should not subject a town to potential liability in tort. This is true if the planning board's fault is seen as a failure to provide for or assure proper drainage, a function long considered to be discretionary, quasi-judicial, quasi-legislative or purely "governmental." *Johnston* v. *District of Columbia,* 118 U.S. 19, 30 L. Ed. 75, 6 S. Ct. 923 (1886); *Carter* v. *Hawaii,* 47 Hawaii 68, 384 P.2d 308 (1963); 18 McQuillin, *supra ss.* 53.118-.119; Prosser, *supra s.* 131, at 981; Rhyne, Municipal Law *s.* 30-23, at 769-71 (1957); 3 Yokley, Municipal Corporations *s.* 477, at 134 (1958). *See generally* Annot., 173 A.L.R. 1031 (1948).

Nor would the planning board be liable on the basis that it failed to enforce the town's ordinance requiring adequate

drainage, since the enforcement of laws in general, and zoning ordinances in particular, is certainly the kind of discretionary, "governmental" activity which as a general proposition ought not to lead to tort liability. *Hermer* v. *Dover supra;* 2 Harper and James, *supra s.* 29.6, at 1623; Prosser, *supra s.* 131, at 979; 18 McQuillin, *supra s.* 53.36, at 211-12; 3 Rathkopf, The Law of Zoning and Planning 82-3 (3d ed. 1972); 4 California Law Revision Commission, Recommendation Relating to Sovereign Immunity 817 (1963). To hold a town liable to tort for failure to enforce its ordinances would discourage the enactment of many important ordinances, and "[f]ar more persons would suffer if government did not perform these functions at all than would be benefited by permitting recovery in those cases where the government is shown to have performed inadequately." 4 California Law Revision Commission, *supra* at 818.

We thus conclude that both the traditional and "modern" theories of governmental liability support immunity and non-liability for the town in this instance, and we consequently refuse to carve out a new exception to the general rule of immunity for the "unique" facts of this case. Nor do we think that the facts and circumstances of this case fall within one of the commonly recognized exceptions to the immunity doctrine as plaintiffs contend. This case involves only the improper approval of a defective subdivision plan and does not concern the liability of a town for damages arising out of its negligence in the construction, maintenance or operation of a municipal sewerage or drainage system. *Allen* v. *Hampton,* 107 N.H. 377, 222 A.2d 833 (1966); *Mitchel* v. *Dover,* 98 N.H. 285, 99 A.2d 409 (1953); *Resnick* v. *Manchester,* 99 N.H. 436, 113 A.2d 496 (1955); *Roberts* v. *Dover,* 72 N.H. 147, 55 A. 895 (1903). Nor is this a case where a municipality invades an adjoining landowner's property rights. *Wadleigh* v. *Manchester,* 100 N.H. 277, 123 A.2d 831 (1956). To plaintiffs' argument that they purchased their properties in reliance on the zoning ordinances and in the belief that they would be enforced, we respond by reiterating the statement of the California Law Revision Commission quoted above that an inadequately enforced zoning ordinance is better than no zoning ordinance at all.

Plaintiffs express a concern that dismissal of their suit as to the town of Hudson on the basis of municipal immunity may leave them without any remedy whatsoever. This concern is unfounded. Our holding in this case that the town is immune from suit has no bearing on the question of the developer's alleged liability to the plaintiffs. Harper and James, *supra s.* 29.4, at 1618; 18 McQuillin, *supra s.* 53.75a, at 317-18. *See generally* Annot., 9 A.L.R.3d 382 (1966). Nor do we rule out the possibility that plaintiffs may by mandamus compel the town to take action against the developer under RSA 31:88 to abate the drainage problem if and when the requisites to such an action are shown to exist. *Bois* v. *Manchester,* 104 N.H. 5, 177 A.2d 612 (1962). *See generally* Annot., 35 A.L.R.2d 1135 (1954).

*Town of Hudson's exception sustained; remanded.*

GRIMES, J., concurred in the result; GRIFFITH, J., did not sit; the others concurred.

GRIMES, J., *concurring in the result.* Although I concur in the result in this case I cannot agree with the dictum which purports to presage the judicial abolition of sovereign immunity.