AGNES MALLEY *vs.* DAVID T. LANE.

Third Judicial District, Bridgeport, October Term, 1921.
WHEELER, C. J., BEACH, GAGER, CURTIS and BURPEE, Js.

The owner of stolen goods, or any other person, may follow and re-take them and tender the thief to justice.

In the present case the plaintiff, who was employed as a clerk in a bookstore, went to the assistance of her employer in attempting to detain the defendant whom they had caught in the act of stealing books worth less than $15. The defendant resisted, and grasped the plaintiff's wrist and twisted it with such violence as to throw her upon the floor, rendering her unconscious for a time and causing permanent disabilities. *Held* that the plaintiff was justified in assisting her employer, and that the defendant committed a wanton and reckless assault upon her which warranted the award of exemplary as well as actual damages.

It is not necessary or usual to prove the expenses of litigation in excess of the taxable costs, to which exemplary damages must be confined, but it is not erroneous to admit evidence relative to the amount.

The evidence reviewed and *held* to sustain the trial court in holding that the plaintiff had made all reasonable efforts to relieve herself of her disability.

Argued November 4th—decided December 23d, 1921.

ACTION to recover damages for assault and battery, brought to the Court of Common Pleas in Fairfield County and tried to the court, *Walsh, J.;* facts found

and judgment rendered for the plaintiff for $2,000, and appeal by the defendant. *No error.*

For some time before April 2d, 1919, the plaintiff had been employed as a clerk by one Scalley, who owned and conducted a bookstore in Bridgeport. Scalley during this time had missed many books of considerable value which could not be accounted for, and had become convinced that the defendant, who had been in the habit of frequently visiting his store apparently to look over his books, had stolen the missing ones, and suspected that he would continue his thefts; and therefore Scalley made plans with the plaintiff and with Scalley's brother, who was also employed as a clerk, to detect the defendant in the act and cause his arrest.

The defendant entered Scalley's store late in the afternoon of April 2d, 1919, and began to go about and look at the books. Thereupon, Scalley, in a voice audible to the defendant, said to his clerks that he was going to leave the store for a while, and in accordance with their preconcerted plan the clerks retired to a room in the rear of the store, and Scalley, instead of going outside, hid himself in a place from which he could watch the defendant thus left alone. During the next twenty minutes Scalley saw the defendant conceal five books in his clothing. He then came from his hiding place, called to the plaintiff and his brother, and in their presence charged the defendant with having stolen the books which he had seen him conceal and others, demanded that he give up those he then had on his person, declared that he was going to arrest him for this and his previous thefts, and sent his brother out for a police officer to make the arrest. The defendant entreated Scalley not to cause his arrest, and when Scalley repeated that he would do so, the defendant attempted to escape from the store.

Scalley then placed his hand on the defendant's shoulder to stop him, and told him he was under arrest for the thefts committed by him and would be detained until a policeman came. Thereupon the defendant attempted to push by Scalley, and seized him and choked him until he had overpowered him and thrown him to the floor bleeding and exhausted. While he was holding Scalley in this position and condition, the plaintiff took hold of the defendant's coat in order to save her employer from more serious injury which she thought threatened him, and to hold the defendant until an officer arrived. Thereupon the defendant grasped the plaintiff's right wrist and twisted and turned it with such violence that he threw her over a gas stove standing nearby and hurled her upon the floor, where she lay crying out with pain while the defendant made his escape. She was partially unconscious twenty to thirty minutes, and afterward hysterical and fainting, and that night suffered intense pain from her swollen and inflamed wrist. Her physician prescribed complete rest until the swelling of her wrist should subside. After three or four weeks, her physician, although he did not then consider the injury to her wrist as serious, suggested that an X-ray picture of it might be taken; but the plaintiff, not knowing what an X-ray picture was, did not adopt the suggestion, and the physician did not again suggest the subject to her. She then resumed her usual work, but about two weeks later was compelled to give it up because of the resulting pain, inflammation and congestion in her wrist. She went to her work again on August 14th, 1919, and continued until December 17th, 1919, when she was forced to cease for the same reasons. In June, 1920, she resumed her work again, and was compelled to desist in November, 1920, because of the same pains and conditions in her wrist, and her physician

then advised her to cease to attempt to work and take a prolonged rest. During all this time, the plaintiff's general health declined, and her nervous condition was such that her physician would not advise her to submit to a surgical operation which possibly might have restored her wrist to its normal state. Such an operation would cost about $150. The plaintiff was still suffering from her injuries at the time of the trial in March, 1921. Her wrist joint was dislocated and its ligaments detached by the violence of the assault made upon her by the defendant. These results are permanent, and will prevent the plaintiff from pursuing the occupation by which she had earned her living. She is unmarried and dependent upon her earnings. She has spent $16 for services of physicians and for medicines. The value of the books which the defendant had stolen on the day he was apprehended by Scalley, was less then $15.

The plaintiff at the time of the assault was a small, fragile woman; the defendant was a professional acrobat and in excellent physical condition.

The court found that the assault and battery made by the defendant was wanton and reckless, and allowed exemplary damages.

*Edward J. McManus,* for the appellant (defendant).

*Robert H. Gould,* for the appellee (plaintiff).

BURPEE, J. The defendant admits that on April 2d, 1919, he stole books exposed for sale and of the value of less than $15, and that he was caught in the act by the owner of the books. He contends that this theft was not a felony, and therefore the owner of the books, since he was only a private person without a warrant in legal form, had no lawful right to arrest him or to

detain him until a police officer could be got to arrest him. Hence, he argues, the acts of Scalley, the owner of the stolen books, constituted an assault upon the defendant which he was justified in resisting as he did; and when the plaintiff took hold of his coat in her attempt to assist and protect her employer, she committed another and independent assault on the defendant, against which he had a lawful right to defend himself in the manner he chose. The defendant claims that his crime was "petty larceny," because by statute it is punishable by a fine of not more than $100 and imprisonment for not more than sixty days, or both. He contends that this crime is only a misdemeanor, and for an offense of such low degree, a private person without a proper warrant may not arrest or detain the offender.

The admitted crime was theft. In 1795 our court declared: "When a theft is committed, the owner of the goods stolen, may pursue and take the goods and the thief; and so may any other person with authority from the owner; or even without, and tender the thief to justice, and he will be excusable provided the person taken is found guilty. Stealing is a crime so odious in itself and so destructive to the well-being of society, that every good citizen ought to assist in arresting the thief in his flight." *Wrexford* v. *Smith,* 2 Root, 171.

These principles of our common law have been respected and acted upon by our people since the earliest times, both under the Colonial charter and under the Constitution which superseded it in 1818. They are well calculated to secure the safety of the public and the efficient execution of public justice, while they protect the security of the citizen against unwarrantable restraints upon his personal liberty.

In this case Scalley, in whose presence the defendant had committed a theft, had the legal right to arrest and

hold him until a peace officer could be found to take him into custody. The plaintiff also, in whose presence the crime had taken place, had the right either to make the arrest and detention herself, or to assist Scalley in his undertaking.

When the defendant resisted the attempt of Scalley to arrest him, and choked and threw Scalley on the floor, he was committing a breach of the peace. He had no right to resist Scalley's reasonable efforts to arrest and detain him; and if he had any right of resistance or self-defense, he had gone far beyond its limits when he used brutal and unnecessary violence. "Every force and violence," said Lord Mansfield, "is a breach of the peace." *Rex* v. *Storr*, 3 Burrow's (King's Bench) 1698, 1701 (97 Reprint, 1053). "The peace" is that state and sense of safety which is necessary to the comfort and happiness of every citizen, and which government is instituted to secure. It is not the doctrine of the law that there is no breach of the peace unless the public repose is disturbed. Regardless of the character of the crime of larceny of which he was guilty, the defendant then became guilty of a misdemeanor of a kind that made it the right and duty of. any private person to arrest him without a warrant. *Knot* v. *Gay*, 1 Root, 66; General Statutes, § 6343; 5 Corpus Juris, 413; 2 Ruling Case Law, 449, 450; 1 Bishop, New Crim. Law, § 550; 1 Bishop, New Crim. Procedure, §§ 164 (1), 166 (2); *Palmer* v. *Maine Central R. Co.*, 92 Me. 399, 409, 42 Atl. 800; Vorhees on Arrest (2d Ed.) § 117. The principle supporting this law is thus described in 1 Bishop, New Crim. Procedure, § 171: "The doctrine would seem to be that one who sees another committing a crime should do something to prevent it; or, failing in this, should bring him to justice. Passing over those high crimes in which the neglect of this duty is

Malley *v.* Lane.

indictable, to those of a lower grade wherein the duty is a mere moral one, the reason of the thing would seem to be that the law will permit the person to discharge this moral duty by interfering, if disposed, to prevent the commission of the crime, or to arrest the doer, or both. Yet it might not allow this duty to be carried to all lengths. If the thing done was not *malum in se,* but only *malum prohibitum,* or was of a nature not immediately disturbing the public repose, and not offending public morals, or the like, so injudicious would it be to make the arrest without a warrant, by a private person, when no perceptible harm would come from the delay necessary to call in public authority, that the courts could hardly be expected to sanction such an arrest."

In any aspect which the facts in this case present, it is evident that the plaintiff was at least justified in taking hold of the defendant's coat. Therefore when he repelled her attempted interference by seizing her wrist with such force that he dislocated the joint and threw her over a gas stove upon the floor, he made an inexcusable assault upon her. No such force was necessary to repel the efforts of a small, fragile woman; there was no occasion to use upon her in this manner the strength of a trained acrobat in fine physical condition. The trial court properly found that such an assault was wanton and reckless. Hence, punitive or exemplary damages were lawfully awarded. *Maisenbacker* v. *Society Concordia,* 71 Conn. 369, 378, 42 Atl. 67; *Hanna* v. *Sweeney,* 78 Conn. 492, 62 Atl. 785. The award of such damages must be confined to the expenses of litigation in excess of the taxable costs. It is not necessary or usual to prove what such expenses actually were; but it is not erroneous to admit evidence relative to the amount. *Bennett* v. *Gibbons,* 55 Conn. 450, 452, 12 Atl. 99.

The appellant claims that the court erred in failing to hold that it was the plaintiff's duty to make all reasonable efforts "to relieve herself of her disability." We do not understand that the court failed in that respect. The facts are that at a time when her injuries were not regarded as serious, a physician suggested that an X-ray picture of her wrist might be taken, but he did not advise it then or follow up his suggestion afterward. He did not at any time advise a surgical operation, because her nervous condition resulting from her injuries was such that he could not advise her to submit to the necessary anæsthetic. It does not appear that a surgical operation would have restored her wrist to its natural functions. The possibility of a cure was doubtful. The facts warranted the conclusion of the trial court that the injuries of the plaintiff, without her fault, were of such a permanent character as to prevent her pursuing hereafter the occupation by which she had earned her living. She had continuously followed that occupation about twelve years, earning on an average of $20 for six days' work; and that in spite of repeated attempts, she had been able to work only about thirty-eight of the more than one hundred weeks that intervened between the day of the assault upon her and the time of trial. Thus she seems to have lost about $1,200 in earnings. She finally ceased to attempt to do the work she had been doing by advice of her physician, in whose opinion a prolonged rest might remedy her injury. During this indefinite time she must suffer additional loss of earnings. Besides compensation for these losses, she is entitled to recover for the intense pain she has suffered from time to time during two years, and also the exemplary damages which might properly be allowed. What these sums should be must be determined by the reasonable discretion of the trial court. With the facts before us, we

cannot say that that discretion was misused in the judgment rendered.

It is found that the plaintiff ceased to work in November, 1920, by advice of her physician for the purpose of allowing her wrist a prolonged rest which might remedy the injury it had sustained. Evidence of her inability to work after that time was not remote, but quite pertinent to prove that she was not negligent or unreasonable in using care to make the consequences of her injury as small as possible.

Having thus considered all of the assignments of error which were deemed worthy of presentation in the appellant's brief, we find that in the conclusion of the trial court

There is no error.

In this opinion the other judges concurred.