35 P.(2d) 973

NAPOLEON v. CITY OF SANTA FÉ.
No. 3941.

Supreme Court of New Mexico.
Sept. 7, 1934.

C. R. McIntosh and Gilbert & Hamilton, all of Santa Fé, for appellant.

Reed Holloman, of Santa Fé, for appellee.

SADLER, Justice.

The plaintiff, appellee, recovered judgment against the city of Santa Fé for $8,900 by reason of injuries suffered in a fall on the sidewalk paralleling College street in said city. The sidewalk in question was of brick construction. Where plaintiff fell and injured herself there was a depression in the sidewalk about four feet in diameter, the center of which was approximately six inches below the level of the sidewalk.

The depression had no outlet, with the result that water would accumulate in the basin. On the morning in question the accumulation of water in said depression was frozen over with a smooth coating of ice. The coating of ice was practically level with the sidewalk. Over this coating of ice and the sidewalk there was a slight snowfall, rendering the ice in the depression indistinguish-

able from other portions of the sidewalk. The plaintiff returning to her home from church passed over this section of the sidewalk, slipped, fell, and received the injuries for which recovery was sought, consisting of a broken bone in her right leg and the spraining of her right ankle, as well as other injuries. The right ankle joint remained stiff following the injury, and the court found:

"That the said right ankle joint is stiff and that said plaintiff remains in a crippled condition, and is permanently crippled and will permanently suffer pain by reason of said injuries.

"That on account of said injuries said plaintiff has become very nervous and will continue in that condition permanently."

The defendant knew, or should have known, of the condition of the sidewalk at the place in question for a sufficient time prior to the injury to have enabled it to restore the same to a safe condition for use by pedestrians. The plaintiff's injuries resulted proximately from the defective condition of the sidewalk at the time in question.

The foregoing narration of the facts fairly reflects the findings of the trial court upon which its judgment is based. It will be sufficient for the purposes of this opinion except as amplified in connection with the disposition of certain points urged for reversal.

The city complains of an erroneous application of the law governing liability of municipalities for defective sidewalks. It seeks to bring itself within the immunity from liability furnished a municipality on account of injuries traceable to slippery condition of its

sidewalks from the presence thereon of ice, snow, or water, where such presence is not due to any infirmity in construction or maintenance. The defendant's difficulty; however, lies in the court's finding that plaintiff's injuries were the direct and proximate result of negligent maintenance.

█ It seems to be settled by persuasive authority that, if the presence of ice on a sidewalk is due either to defective construction or improper maintenance, and the defect alone, or in concurrence with the ice, proximately causes injury, a conviction of negligence is warranted and will support a judgment for damages, provided the municipality knew or should have known of such defect in time to remedy same. 7 McQuillian on Municipal Corporations (2d Ed.) § 2978, p. 183 (190); 2 Shearman & Redfield on the Law of Negligence (6th Ed.) § 363; 43 C. J. 1023, § 1801, under Municipal Corporations; Dracass v. Chicago, 193 Ill. App. 75; Wyckoff v. City of Cameron (Mo. App.) 9 S.W.(2d) 872; Rice v. Kansas City (Mo. App.) 16 S. W.(2d) 659, 661; Town of Cornwall v. Derochie, 24 Can. S. C. 301; Corts v. District of Columbia, 7 Mackey (18 D. C.) 277; Holbert v. City of Philadelphia, 221 Pa. 266, 70 A. 746, 20 L. R. A. (N. S.) 201; Barry v. Akron, 28 Ohio Cir. Ct. R. 728. See, also, annotation in 3 A. L. R. 1130, supplemented in 48 A. L. R. 1154 and 80 A. L. R. 1170, dealing with liability of a municipality for injury resulting from the slippery condition of a sidewalk, in concurrence with a defect therein. The present case falls within the scope of said annotation. For annotations dealing more generally with the question, but excluding

cases within the scope of the annotation just cited, see 13 A. L. R. 17 as supplemented in 80 A. L. R. 1151.

After stating the general doctrine in cases of slippery sidewalks to be one of immunity from liability, Mr. McQuillian goes on to say: "This rule as to non-liability for slippery sidewalks is subject to this exception: If the danger from the snow or ice on the sidewalk was due to other negligence of the municipality, it is liable; and this exception is equally applicable where the non-liability for injuries resulting from snow and ice is based on other grounds. Thus, it may be that if the sidewalk had been properly constructed in the first place or had been kept in repair, the ice would not have formed, and if this be true and the municipality was negligent in regard to the construction or failure to repair, it is liable. However, in such a case, it is necessary to show clearly the negligence in regard to the defect in the sidewalk, and also that the injury would not have occurred merely because of the snow or ice, without regard to the defect in the sidewalk."

The author of the text on Municipal Corporations at 43 C. J. 1023 states the exception to the rule of non-liability as though unquestioned. The text reads: "A municipal corporation is liable for an injury due to an accumulation of ice or snow upon a sidewalk where its own negligence caused or contributed to its being there, as where it was due to the negligently defective construction or condition of the walk, or a defective, insufficient, or obstructed drain, gutter, catch basin, or sluiceway for conducting surplus water from a watering trough, a leaky hydrant, or negligence on the part of the municipality in permitting water to be discharged upon the sidewalk from a conductor leading from the roof of an adjacent building, or in failing to prevent the flow of surface waters upon a walk, and in such cases it is immaterial that the accumulation is smooth and level rather than rough and uneven."

Nor is actual notice of the defect a condition to liability if it has existed for such a length of time that notice will be presumed. 43 C. J. 1025; City of Chickasha v. Daniels, 123 Okl. 73, 251 P. 978, 51 A. L. R. 568; Dracass v. Chicago, supra.

The theory of the trial court was that plaintiff's injury was attributable concurrently to the dangerous condition of the sidewalk by reason of the depression and the accumulation of ice therein. It found specifically that the defect in the sidewalk was dangerous to pedestrians and had existed constantly for more than one year prior to the date of the injury, and further found: "That said defective condition of said sidewalk, and the fact that water did accumulate therein, and froze over, forming ice at said place, caused the plaintiff to slip and fall and was the proximate cause of said injury."

The facts and theory of this case and those of Rice v. Kansas City, supra, are much alike. There the court said: "In the instant case, the cause went to the jury upon the theory that the hole or depression in the pavement of the crosswalk, together with the ice on the sides thereof and slush therein, combined to

produce the injury. It may not be disputed that there was substantial evidence in support of plaintiff's theory in this respect, and there was therein a question for the jury's determination as to whether or not the crosswalk was unsafe and dangerous."

The theory of liability in this class of cases is different from that which controls where the structural defect in the sidewalk or street is not in itself dangerous, nor a contributing cause of the injury. The distinction between liability in the two classes of cases is well illustrated by two decisions from the District of Columbia, Corts v. District of Columbia, cited supra, and Free v. District of Columbia, 10 Mackey (21 D. C.) 608.

The plaintiff's evidence brings her case fairly within the line of authorities permitting recovery for negligent maintenance on the part of the city, and the evidence furnishing substantial support for the findings, we therefore must deny this claim of error.

It is next urged upon us that plaintiff's refusal to have an X-ray picture made of her injuries so contributed to the seriousness and permanency thereof as to warrant reversal. Here is the claim of error met with the absence of any affirmative finding supporting its position. In addition, it is confronted by the court's refusal of such a finding.

Certainly, plaintiff's refusal was unwarranted and we in no sense approve same. Her attending physician was himself so provoked by the refusal that he came near withdrawing from the case. But it would be merely to penalize her obstinacy to constitute the refusal a ground of reversal, when the physician requesting the X-ray could give no more positive assurance of its efficacy than to say that, had the X-ray been employed, a better result might have been obtained. The trial court refused to find at defendant's request that plaintiff was guilty of negligence in refusing to permit use of the X-ray or that such refusal aggravated the consequences of the injury. See Sullivan v. Tioga R. R. Co., 112 N. Y. 643, 20 N. E. 569, 8 Am. St. Rep. 793; Malley v. Lane, 97 Conn. 133, 115 A. 674. For case note on the subject see 48 L. R. A. (N. S.) 110.

After all it was for the trial court to say whether the refusal had aggravated plaintiff's injuries. It declined to find that such was the case. The evidence does not go far enough to enable us to declare as a matter of law that the trial court was wrong.

The last and final complaint of the judgment bases error upon the court's finding of total disability and loss of an earning capacity of $40 per month. The discussion of this assignment is segregated into three divisions under as many points for argument. They are:

"(A) There was no sufficient proof as to plaintiff's earning capacity, prior to the injury, upon which the court could base a finding.

"(B) The court erred in finding plaintiff's earning capacity to be wholly destroyed.

"(C) The lower court's method of computing the judgment was erroneous."

And the last-mentioned point C is itself further subdivided into two contentions, to wit:

"1. The court in arriving at the amount of the judgment entirely failed to take into consideration the fact that plaintiff's earning power would decrease as plaintiff became older.

"2. The court in arriving at the amount of the judgment entirely failed to take into consideration the present value of plaintiff's loss."

Basically, if defendant has erroneously conceived the judgment to be based wholly upon loss of earning capacity, it is apparent that much of its argument is neutralized by the falsity of the issue to which it relates. We shall later advert more in detail to this observation. But accepting for the moment the correctness of defendant's appraisement of the judgment, we still are unable to agree with its conclusion as to points A and B. A careful review of the evidence fails to convince us it lacks substantiality to support a finding either that plaintiff's loss of earning capacity was virtually total or that such loss approximates the per month estimate fixed by the trial court.

But is it permissible to say that the judgment is based wholly upon loss of earning power? The contention is provoked by the court's comment made at the conclusion of the trial. It remarked: "The judgment will be for the plaintiff against the defendant City of Santa Fe in the sum of eight thousand nine hundred dollars. It might be of interest to counsel to know how those figures were arrived at. I allowed her $150 a month for ten months, and fifteen years at forty dollars a month makes seventy-two hundred dollars,

a total of eight thousand nine hundred dollars."

While the fact that the court divided approximately four-fifths of its aggregate award into units which accord, both as to amount and period with the monetary loss and life expectancy of plaintiff as found by it, easily supports defendant's contention that loss of earning power is alone compensated by so much of the judgment; nevertheless, it is significant that in its comment the court did not so state. It should be said, too, that the period of ten months covered by the monthly award of $150 represents the time plaintiff was confined to the hospital and to the use of crutches.

Certainly, for that ten months' period there can be no basis for contending that pain and suffering do not enter into the trial court's finding of damages. The monthly award for such period far exceeds the monthly loss of earning capacity as found by the court. And except solely for sameness in amount and time limit of the $40 monthly award, there is no more reason for contending as to it that compensation for pain and suffering, past and future, does not find expression in the aggregate award made.

Furthermore, in its findings of fact and conclusions of law adopted and filed June 20, 1933, following the court's comment quoted above, made at the conclusion of the trial on June 14th preceding, as pointed out by the plaintiff, the court found specifically as to several different elements of injury besides loss of earning capacity, most of which are compensable in damages under the heading of

pain and suffering, and followed this enumeration by a finding of damages in the lump sum of $8,900. Judgment was rendered in such amount. The plaintiff conceiving it to have been the court's intention to allow judgment only for the aggregate of the monthly awards as specified in its comment, later entered a remittitur for $200.

■ This circumstance is seized upon by defendant and urged as reflecting plaintiff's acquiescence, prior to appeal, in loss of earning capacity as the sole basis of the forty dollar monthly award in damages. We think the remittitur does no more than to evidence plaintiff's recognition of the method of calculation actually employed in arriving at the total amount which the court intended to award—not as agreeing that no element of damage other than loss of earning capacity entered into the aggregate sum resulting.

Upon the record as it stands before us we hardly feel justified in holding the trial court to have made loss of earning power the sole basis of the $40 monthly award. As pointed out above, the trial court did not say it was for that purpose alone, or at all, or that it applied to any particular element of damages. Its comment we think does no more than to divide into monetary units over the period indicated the aggregate of damages which it intended to allow for all purposes. The various elements entitled to consideration in making up the total award, it enumerated in its findings.

■ The record itself failing to establish convincingly that the award in question rests solely on loss of earning power, it devolved upon defendant by appropriate requests to have the trial court segregate the various elements of damage, upon the refusal of which he might have claimed error. Merrick v. Deering, 30 N. M. 431, 236 P. 735.

■ The method employed in arriving at the amount of damages is further assailed in two particulars, viz., first, in that the trial court failed to consider the diminution of plaintiff's earning power with increasing age; and, next, in that damages for loss of earning power should have been amortized over the period of plaintiff's expectancy and only the present value thereof awarded. Two interesting questions are thus presented. Counsel for defendant have argued them ably and bring an impressive array of authorities to their support. Had the same questions been raised below and presented with like persuasiveness, the defendant might have had the benefit of favorable rulings by the trial court. But not having given the trial court an opportunity to pass upon these questions, we are precluded under well-settled principles of review from making same the grounds of reversal here. Errors touching the measure of damages employed must be called to the attention of the trial court to be availed of here. Kiker v. Bank Savings Life Ins. Co., 37 N. M. 346, 23 P.(2d) 366.

Finding no error in the record, the judgment appealed from will be affirmed, and it is so ordered.

WATSON, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.