533 P.2d 561

**The CITY OF TUCSON, a Body Politic, Appellant,**

**v.**

**Melissa B. HUGHES, Appellee.**

**No. 2 CA–CIV 1749.**

Court of Appeals of Arizona, Division 2

April 3, 197.

Rehearing Denied May 7, 1975.

Chandler, Tullar, Udall & Richmond by Richard Davis, Tucson, for appellant.

John Wm. Johnson, Tucson, for appellee.

## OPINION

HOWARD, Chief Judge.

In a trial before the court appellee was awarded the sum of $11,493.32 for damages caused by raw sewage backing up into her home. Viewed in the light most favorable to upholding the judgment of the trial court, the evidence shows that on April 8, 1972, at approximately 8:00 a. m., appellee's daughter told her that one of the commodes in their home was bubbling up, and water was backing up into the shower. Appellee called the plumber. Two hours later the plumber had not yet arrived and by that time raw sewage had overflowed and covered the floors of her kitchen, dining area, utility room and part of the family room. Appellee then called another plumber who came immediately.

The plumber found that there was an obstruction in a city sewer line and called the City Sewage Department. A repair crew arrived, ran cables through a manhole and removed the obstruction which consisted of an accumulation of grease.

Prior to 1972 it had been at least 15 years since any preventive maintenance had been done on the sewer line which served appellee's home. Since 1972 the city has instituted a four-month periodic inspection of the sewer line.

The overflowing sewage caused damage to personal property inside the home in the amount of $1,493.32. It further caused a horrible odor inside the house. After a few months the "stenchy odor" disappeared, but there is still an odor in the kitchen and service room. Appellee testified that her $42,000 house had a value of only $21,000 because of the sewage overflow. She also felt it would be very difficult for her to sell the house since she would feel obligated to tell prospective purchasers about the sewage backup.

Appellee also testified that she suffered a blackout approximately one year after the incident occurred and was taken to a doctor. The problem was diagnosed as severe tension. There was no medical testimony connecting her tension and blackout with the overflow of the sewer.

On appeal appellant contends as follows: (1) it cannot be liable since it did not have actual or constructive notice of the defect in its sewer system; (2) appellee is not entitled to damages for emotional distress and mental anguish; and (3) appellee cannot recover for the diminution in the value of her home.

The law is well settled that a municipality, while not an insurer of the safe conditions of its sewers, is liable for damages resulting from its failure to exercise ordinary or reasonable care to keep them in repair and free from obstructions. Pettinger v. Village of Winnebago, 239 Minn. 156, 58 N.W.2d 325 (1953); White v. City of Lovington, 78 N.M. 628, 435 P.2d 1010 (1967); Pfleiderer v. City of Albuquerque, 75 N.M. 154, 402 P.2d 44 (1965). As noted in 57 Am.Jur.2d Municipal, School, and State Tort Liability § 213 (1971) and Annot. 59 A.L.R.2d 281, 304 (1958), courts are divided concerning whether actual or constructive notice of an obstruction in a sewer or drain is a condition precedent to liability on the part of a municipality for damages.

We believe those cases which do not require notice to be the better reasoned. The duty of a municipality to keep its sewers in repair involves the exercise of a reasonable degree of watchfulness in ascertaining their condition from time to time and preventing them from becoming dilapidated or obstructed. Where the obstruction or dilapidation is an ordinary result of the use of the sewer which ought to be anticipated and could be guarded

against by occasional examination and cleansing, the omission to make such examinations and to keep the sewers clear is a neglect of duty which renders the municipality liable. Floyd v. City of Butte, 147 Mont. 305, 412 P.2d 823 (1966); City of Portsmouth v. Mitchell Mfg. Co., 113 Ohio St. 250, 148 N.E. 846 (1925); 57 Am.Jur. 2d Municipalities, School, and State Tort Liabilities § 209 (1971). In the case of Vitucci Importing Co. v. City of Seattle, 72 Wash. 192, 130 P. 109 (1913), the court cites with approval on the issue of notice the case of Vanderslice v. City of Philadelphia, 103 Pa. 102 (1883):

> "The mere absence of this notice does not necessarily absolve the city from the charge of negligence. Its duty to keep its sewers in repair is not performed by waiting to be notified by citizens that they are out of repair, and repairing them only when the attention of the officials is called to the damage they have occasioned by having become dilapidated or obstructed; but it involves the exercise of a reasonable degree of watchfulness in ascertaining their condition from time to time, and preventing them from becoming dilapidated or obstructed. Where the obstruction or dilapidation is an ordinary result of the use of the sewer, which ought to be anticipated and could be guarded against by occasional examination and cleansing, the omission to make such examinations and keep the sewers clear is a neglect of duty which renders the city liable." 130 P. at 111.

In accord with the position taken in *Vitucci* are City of Birmingham v. Norwood, 220 Ala. 497, 126 So. 619 (1930); Kramer v. City of Los Angeles, 147 Cal. 668, 82 P. 334 (1905); Town of French Lick v. Teaford, 78 Ind.App. 609, 131 N.E. 86 (1921); Floyd v. City of Butte, supra; Randall v. City of Chadron, 112 Neb. 120, 198 N.W. 1020 (1924); Henry Clay v. Jersey City, 74 N.J.Super. 490, 181 A.2d 545 (1962); McCarthy v. City of Syracuse, 46 N.Y. 194 (1871).

On the notice issue appellant suggests an analogy with the case of City of Phoenix v. Williams, 89 Ariz. 299, 361 P.2d 651 (1961). That case stands for the proposition that if a defect in the street is caused by the failure of the municipality to repair in general, it is not liable unless it has actual notice (1) of the defect or (2) of such facts and circumstances as would by the exercise of reasonable diligence lead a prudent person to such knowledge, i. e. constructive notice. We do not believe that the notice requirement applicable to street and highway cases should be applicable to cases involving sewer blockages under a factual situation as posed in the case sub judice. When there is a defect in the street caused by the failure of the municipality to repair in general there is only a possibility of an injury occurring since members of the public have the ability to protect themselves by keeping a watchful eye. However when there is an obstruction in a sewage system, there is no longer a mere possibility, but rather a likelihood, of an injury and there is no opportunity for self-protection. Indeed, it would be absurd if we were to hold that a municipality is entitled to "one free overflow" of the home of one of its citizens before it can be held liable.

The trial court, as the trier of fact, could well have come to the conclusion that the city was negligent in not inspecting or performing any maintenance on the sewage line for the preceding fifteen years; that the accumulation of grease which caused the sewage overflow would have been detected and cleansed if such inspection had taken place and that under the circumstances the conduct of the city was unreasonable.

■ On the issue of damages, we note that appellee asked for both property damages and damages for her emotional suffering. The judgment included a sum for the property damage and also an additional $10,000. Appellant contends that it is obvious the $10,000 represents damages for emotional distress and mental anguish and that such damages are not recoverable in a case such as this. We need not decide the

question of whether such damages are recoverable. Appellee testified as to the diminished value of her home. There was no evidence introduced to rebut her testimony. The $10,000 could well represent damages to the home. Appellee as the owner of the home was competent to testify as to the value of her home both before and after the overflow. Appellant's claim that we will be setting a dangerous precedent and open the floodgates of litigation is simply without merit. Appellant could have introduced evidence refuting appellee's testimony but failed to do so. The trial court did not err in its award of damages.

Affirmed.

KRUCKER and HATHAWAY, JJ., concur.