628 P.2d 1126

**Luis S. CARDOZA, Plaintiff-Appellee,**

v.

**The TOWN OF SILVER CITY,
Defendant-Appellant.**

**No. 4697.**

Court of Appeals of New Mexico.

March 19, 1981.

Mark C. Meiering, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for defendant-appellant.

Anthony F. Avallone, Las Cruces, for plaintiff-appellee.

## OPINION

SUTIN, Judge.

This is a personal injury action brought by plaintiff to recover damages sustained when he drove his vehicle over a manhole cover in a street in Silver City, New Mexico. The jury found for plaintiff and defendant appeals from the judgment rendered. We affirm.

At about 3 a. m. on November 28, 1976, plaintiff was driving down 21st Street in Silver City, New Mexico. The street was snow packed. Suddenly, plaintiff felt a big jolt, as though the car hit a brick wall. He was thrown up to the ceiling of the car. After the car stopped, plaintiff walked back to the scene of the accident and found an open manhole with the cover on one side of it. The police were called. An officer arrived and was taken to the scene. He attempted to put the cover on the manhole but it was too heavy. It weighed 250 pounds.

The cover had been placed on the manhole some 20 to 25 years prior to the date of the accident. After the accident, the cover and the ring were replaced. The Superintendent of the Water and Sewer Department did not know the disposition of the cover. He said, "It might be in a scrap pile somewhere, it might be in Japan."

Roger Zimmerman, professor of civil engineering at New Mexico State University testified that a gap of ¾ of an inch existed between the cover and the ring and that a portion of the edge of the cover had worn away. When asked to state what caused the manhole cover to pop out, he answered:

Based on my investigation of the photographs primarily, dealing with this particular thing, *my observation is that there was a mismatch in the size of the cover and ring.* And that due to this mismatch that there is a tendency for the cover to be able to rotate and pop up, in a sense, a vernacular of pop up.

\* \* \* \* \* \*

*The photograph on this indicates that there is an unusually large gap between the cover and the rim*, and that this, with the other geometry of the rim and the ring, could cause a potential where the cover could rotate.

\* \* \* \* \* \*

So I took the measurements on the photograph and I estimated this to be three-quarters of an inch \* \* \* \*

\* \* \* \* \* \*

[B]ut again this mismatch idea, *that possibly this cover and this rim weren't made for each other, because this height seems*

*to be in the order up to three-eights or greater in height* * * * *

\* \* \* \* \* \*

* * * Now, there's one other thing I wanted to point out before I finish. In Photograph No. 6, the one that shows the big gaps ... *there appears to be an unequal, uneven circle around the outer rim of the cover.* You'll notice that the concentric rings that are there that are due to the castings are somewhat symmetrical, *but you'll notice that the rim is not symmetrical* * * * * [All emphases added.]

The manhole cover "popped out" because a "mismatch" existed in the size of the cover and ring, i. e., the cover and the ring may not have been made for each other due to the gap, and the worn out portion triggered the rotation of the cover upward. As the wheel of a car hit the cover, one side of the cover could be pushed down causing the other side to come upwards. When shown a photograph taken shortly after the accident, of the manhole cover in a tilted manner, Professor Zimmerman said: "I'm saying that could certainly happen." The cover when vertically rotated would stick 12 inches above the surface of the street.

All city sewer mains were maintained periodically. In the course of sewer maintenance, manholes were inspected. However, no written reports of those inspections were kept, and no record maintained of the last time this manhole was inspected. No record of repair was kept for the last 10 years. After the accident, the defendant began to keep a log of inspection of sewer lines.

Defendant raises four points in this appeal. They will be discussed *seriatim:*

A. *Defendant Town failed to install and maintain a properly fitting manhole cover.*

Defendant claims there was a complete failure to show that Silver City knew or should have known of the existence of this dangerous condition in time to repair the condition prior to plaintiff's accident; that

specifically there was no evidence establishing the duration of the condition. We disagree. Actual or constructive notice is not applicable. The duration is known. The court asked the Superintendent of the Water and Sewer Department to state how long the manhole cover had been installed. He answered:

Well, my knowledge would be, let's say twenty, twenty-five years.

█ Whether actual or constructive notice is or is not necessary, depends on whether the municipality caused or did not cause the defect.

In *Wisener v. State,* 123 Ariz. 148, 598 P.2d 511 (1979), omitting citation of authorities, the court said:

* * * For a municipality to be liable for a failure to repair, it must have first received actual or constructive notice of the defect. *However, if the city itself caused the defect, or if the repairs or improvements were defective when made, notice of the defects is not a prerequisite to holding the municipality liable.* [Emphasis added.] [Id. 148, 598 P.2d 513.]

█ Actual or constructive notice loses its effectiveness when the city itself, which has full and complete charge of its streets, sidewalks, or systems, including the sewer system, creates or causes a defective or dangerous condition to exist. Its duty is to protect the public, not to cause injury to those who carefully operate motor vehicles on the streets or carefully walk on sidewalks.

The court instructed the jury that:

1. The City failed to install and maintain a properly fitting manhole cover.

Upon objection made, the court stated that proof of knowledge of any hazardous condition was not an issue in the case; that the City had installed it and maintained it, completely under their jurisdiction. We agree.

█ We begin with the proposition that if there is doubt as to whether a city is liable for its torts, the question will be resolved against the city. *Barker v. City of Santa Fe,* 47 N.M. 85, 136 P.2d 480 (1943). There is no doubt in the instant case.

The defense is not based upon whether the City "failed to install and maintain a properly fitting manhole cover"; but upon whether it had actual or constructive notice of the defective condition a sufficient length of time prior to the accident to enable it to put the street in a state of repair. It claims that New Mexico Supreme Court decisions follow this rule. It relies on *Napoleon v. City of Santa Fe*, 38 N.M. 494, 35 P.2d 973 (1934); *Bryan v. City of Clovis*, 54 N.M. 235, 220 P.2d 703 (1950); *Primus v. City of Hot Springs*, 57 N.M. 190, 256 P.2d 1065 (1953). We disagree.

*Napoleon* involved injuries sustained by slipping on snow covered ice in a sidewalk depression where the City had constructive notice of the defect. Plaintiff was allowed to recover. *Bryan* involved injuries by slipping on a ramp which led from a sidewalk to a street where the City had adequate notice. Plaintiff was allowed to recover. These cases do not support defendant's position. They are not cases where plaintiff was allowed to recover absent any actual or constructive notice. *Primus* does not support defendant's position. It involved a narrow street bordered by a high bank and arroyo where the driver of an automobile failed to make the turn. This dangerous condition was apparently created by the City. Omitting citation of authorities, the court said:

> A municipal corporation is required to exercise ordinary care to maintain its streets in a reasonably safe condition for travel in the usual modes by day and night.
>
> A municipality which has full and complete charge of its streets (and they have such charge in New Mexico except over state highways) is liable in damages for injuries sustained in consequence of its failure to use reasonable care to keep them in a reasonably safe condition for travel. [57 N.M. 194, 256 P.2d 1065.]

Defendant avoids other New Mexico cases which do not support its position. *Roswell v. Davenport*, 14 N.M. 91, 89 P. 256 (1907) held that where evidence was shown of the generally unsafe condition of a sidewalk, this evidence alone, would charge a municipal corporation with notice "or at least be evidence of, notice of the particular defect causing the injury." [Id. 96, 89 P. 256.] *Johnson v. City of Santa Fe*, 35 N.M. 77, 290 P. 793 (1930) holds that when a street's dangerous condition is caused by improvement of an open sewer trench being made by the City, it is unnecessary in an action for personal injury to allege or prove notice of such condition.

*Pfleiderer v. City of Albuquerque*, 75 N.M. 154, 402 P.2d 44 (1965) was a sewage back-up case. The court said:

> The appellant makes the contention that since the cause of the back-up was unknown and *that it did not have notice of the cause*, the city is not liable in damages. The appeal cannot be disposed of on this hypothesis. *While the fact that a sewer does back-up is not of itself proof of negligent operation, nevertheless, a municipality is liable for negligence in the operation and maintenance of its system.* [Emphasis added.] [Id. 155–6, 402 P.2d 44.]

The negligence was defendant's failure to exercise reasonable care to keep its sewer line free of obstructions.

The *Pfleiderer* rule is applicable here. The fact that the manhole cover had not rotated vertically before may not be evidence of negligence, but when defendant was negligent in the operation and maintenance of its system, by providing a defective cover, it was liable.

*White v. City of Lovington*, 78 N.M. 628, 630, 435 P.2d 1010 (Ct.App.1967) said:

> * * * The *Pfleiderer* opinion neither approves nor disapproves the notice requirement as a correct statement of law. In other jurisdictions there is a difference of opinion as to whether notice is a condition precedent to liability for failure to maintain a sewer. Annot., 59 A.L.R.2d 281, 304 (1958).

Later Case Service of this Annotation issued in 1976, mistakenly put *Pfleiderer* in the category that a municipality must have had actual or constructive notice. [P. 294.]

See, *City of Tucson v. Hughes*, 23 Ariz. App. 350, 533 P.2d 561 (1975) where *Pfleiderer* and *White* are followed. Municipal liability existed without proof of actual or constructive notice of sewer obstruction.

U.J.I.Civ. 13.17 states:

A city has a duty to use ordinary care to maintain [streets] [sidewalks] in a reasonably safe condition.

■ A violation of this duty establishes municipal liability, irrespective of actual or constructive notice.

■ Immunity granted a municipality under the "Tort Claims Act" * * * does not apply to liability for damages resulting from bodily injury * * * caused by negligence * * * in the maintenance of or for the existence of any * * * street * * * * Section 41–4–11, N.M. S.A. 1978.

For the meaning of this language, see *Moore v. State*, 95 N.M. 300, 621 P.2d 517 (Ct.App.1980). A municipality is liable for damages for negligent maintenance of any existing street. "Maintenance" means "upkeep and repair." *Clay v. City of Los Angeles*, 21 Cal.App.3d 577, 98 Cal.Rptr. 582 (1971). In the instant case 21st Street was established by Silver City. The legislature directed the municipality to serve the public with due care in the maintenance of existing streets. Life or bodily injury is involved. No burden was imposed upon the public to prove notice of a defect or danger. It did not direct the public to investigate the basis of the defect or danger, search the City's records for prior accidents, times of inspection repair or improvements and then deposition the City's personnel to learn whether the City had actual or constructive notice. The only duty of the person injured is to prove the City's negligence.

Defendant had knowledge of its duties. The Council of the Town of Silver City adopted Ordinance No. 536 on November 6, 1977. With reference to manhole covers, Section 15 states:

* * * All covers in the roadways shall be of a class to withstand the anticipated wheel loads. Covers and rims shall be two hundred fifty (250) pounds total weight *and shall be ground to insure full bearing for the entire circumference.* [Emphasis added.]

From the record in this case, the manhole cover should have been carefully inspected. Perhaps it should have been replaced before the accident, not afterwards.

Defendant relies on "manhole cover" cases such as *District of Columbia v. Jones*, 265 A.2d 594 (D.C.App.1970); *City of Paris v. Browning*, 55 Tenn.App. 104, 396 S.W.2d 372 (1965); *City of Phoenix v. Williams*, 89 Ariz. 299, 361 P.2d 651 (1961); *Thomas v. City of New York*, 131 N.Y.S. 697 (1911).

The *Jones* court said "* * * nowhere in the record is there a scintilla of evidence of what caused the cover to slip out of place * * * *" [265 A.2d 595.] The *Browning* case involved a temporary cover with a heavy weight on top, the weight having been removed by some unknown person. The *Williams* case held the City liable when a police officer was sent to investigate a call that the manhole cover was loose. He found it not loose. Later this manhole cover was imperfectly seated and plaintiff's leg slipped into the service hole. The *Thomas* case involved a person who walked into a hole in a park that was not covered by a grate. The City could not anticipate removal of the grate. *Thomas* was not followed in *Warner v. City of Albany*, 262 App.Div. 677, 31 N.Y.S.2d 75 (1941). Warner sat down upon a bench owned and maintained by the City. The bench tipped over because a pin on one side of the bench was missing. If the City failed to show that it exercised due diligence with respect to the bench, the plaintiff was not required to show notice. *Warner* illustrates the heavy burden placed on the City.

Forty years before *Thomas*, the New York rule on notice was established in *McCarthy v. The City of Syracuse*, 46 N.Y. 194 (1871), a defective sewer system case. The court said:

The mere absence of this notice does not necessarily absolve the city from the charge of negligence. Its duty to keep its sewers in repair, is not performed, by

waiting to be notified by citizens that they are out of repair, and repairing them only when the attention of the officials is called to the damage they have occasioned by having become dilapidated or obstructed; but it involves the exercise of a reasonable degree of watchfulness in ascertaining their condition, from time to time, and preventing them from becoming dilapidated or obstructed. Where the obstruction or dilapidation is an ordinary result of the use of the sewer, *which ought to be anticipated* and could be guarded against by occasional examination and cleansing, the omission to make such examinations and to keep the sewers clear, is a neglect of duty which renders the city liable. [Emphasis added.] [Id. 197–8.]

*McCarthy* was followed in *Knoechel v. Inzirillo*, 16 N.Y.S.2d 680 (1940); *City of Tucson, supra*; *Rotella v. McGovern*, 109 R.I. 529, 288 A.2d 258 (1972); *City of Portsmouth v. Mitchell Mfg. Co.*, 113 Ohio St. 250, 148 N.E. 846 (1925).

■ The burden placed upon the City is a heavy one. Defendant installed the sewer system for the benefit of the public. It placed a manhole cover in the middle of a street. It had a duty at that time to have its engineer determine whether the cover was mismatched, whether over the years, it had worn to the point where it was dangerous to the traveling public, and whether reasonable inspections of this cover had been made and reported. Defendant produced no evidence of these facts. Defendant cannot sit idly by and escape liability by pushing the burden of actual and constructive notice on the public, injured by the negligence of defendant.

Defendant failed to install and maintain a properly fitting manhole cover and was thereby negligent. It is liable absent any proof of actual or constructive notice. It was charged with this notice.

B. *Plaintiff's evidence was adequate to prove a case against defendant.*

Defendant claims that portions of plaintiff's expert testimony cannot serve as an adequate basis to prove a case against defendant because he testified as to "possibly" not "probably," as causes of the so-called mismatch or gap. Professor Zimmerman testified from photographs taken by plaintiff. Zimmerman's estimate of the gap differed from that of plaintiff. This difference did not disturb the jury's verdict. The answer to defendant's argument is this: If defendant had not thrown the manhole cover in a stock pile somewhere or sent it to Japan, and then replaced it with a new cover and ring after the accident, it would have been available to determine the exact measurement of the gap as well as its worn condition. In the trial of cases, evidence is the controlling factor. The failure of defendant to produce the cover or make it available or for unaccountable reasons dispose of it, arouses a sense of injustice to members of the public who are injured.

Professor Zimmerman was learned in the use of photographs. He testified with reasonable certainty. It was acceptable to the trial court and the jury. We will not disturb the verdict because the expert used the word "possibly" twice. The use of this word was proper. Professor Zimmerman testified that:

* * * but again his mismatch idea, that possibly this cover and this rim weren't made for each other * * * *

\*      \*      \*      \*      \*      \*

Now, the other thing that could happen, although the photographs in my opinion don't support this, is that possibly again there is a mismatch * * * *

*Douglas v. Sheridan*, 26 N.J.Super. 544, 98 A.2d 632, 633 (1953) says:

* * * Since *"may be" is equivalent to "possibly" or "probably" as distinguished from "certainty"* (Webster's New International Dictionary (2d ed. 1949), 1517), it would appear that the defendants are only required to show that there is a probability or possibility of liability to them from the third party in order to join the alleged joint tortfeasors as third-party defendants. [Citations omitted.] [Emphasis added.]

*Eichenhofer v. City of Philadelphia*, 248 Pa. 365, 93 A. 1065 (1915) involved a nine year old son whose death was caused by falling from a bridge. In a portion of a charge to the jury, the trial judge said in effect that the City would be negligent if it built a bridge with an open space "which would possibly allow people that were properly using the bridge to fall into that space." The court said:

> * * * "Possibly" is defined in the Standard Dictionary as:
>
> > "(1) By any power, mental or physical, that is possible; (2) by extreme or improbable chance; perhaps."

If this statement stood alone, it might constitute reversible error. Taken in connection with the other instructions contained in the charge, *it is apparent that "possibly" here was used in the sense of "perhaps,"* and the proper limitations were frequently repeated in subsequent portions of the charge. *In our opinion the jury could not misunderstand the direction on this point when the charge is considered as a whole* * * * * [Emphasis added.] [Id. 1067.]

■■ Whether we substitute "may be" or "perhaps" for "possibly," Professor Zimmerman's testimony was proper and adequate to prove a case against defendant. In evidentiary matters, parties who seek reversible error on an isolated word used in a mass of expert testimony do not reach the conscience of a court. The occasional use of a wrong word by an expert witness might have a tinge of reversible error but when used during a wealth of testimony, it does not affect the jury during deliberations. Our duty is to study the case as a whole to determine whether reversible error exists and whether the party who complains had a fair trial. Use of the word "possibly" does not cause a ripple in this case. Dr. Zimmerman's testimony was substantial, competent and adequate to establish plaintiff's case.

C. *Failure to instruct on active or constructive notice was not erroneous.*

Defendant argues that the trial court disregarded the legal principles set forth in *Napoleon, Primus* and *Bryan* and committed reversible error when it refused to instruct the jury on actual or constructive notice. As shown in point (A), this claim is without merit.

D. *The mention of insurance does not warrant a mistrial or a new trial.*

After a long recross examination of plaintiff by defendant, the last question and answer given were:

Q. And it's true that Mr. Acosta did not indicate that he knew anything about any manhole problem there; isn't that true?

A. Well, he told me he didn't know anything about any manhole.

On redirect examination, plaintiff was asked this question to which he gave this answer:

Q. What else did Mr. Acosta tell you about this manhole?

A. Well, when we went up there to look at it, he told us that some man from the insurance had gone up to ask him which—

Defendant immediately objected. After some extensive argument on the mention of insurance, the trial court denied a motion for a mistrial. It told plaintiff that he ran the risk if the trial court allowed the trial to continue. Plaintiff withdrew the question and took the risk. The risk was well taken.

Defendant's argument consisted of speculative and conjectural effects that the mention of "insurance" would have upon the jury. The only authority cited is Rule 411 of the Rules of Evidence. It reads:

> Evidence that a person was or was not insured against liability is not admissible upon the issue whether he acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership or control, or bias or prejudice of a witness.

■ Rule 411 has codified the general rule that evidence that a defendant carries

liability insurance is inadmissible in an action for negligence because it is immaterial to the issues tried and prejudicial. *Mac Tyres, Inc. v. Vigil*, 92 N.M. 446, 589 P.2d 1037 (1979). See, *Grammer v. Kohlhass Tank & Equipment Co.*, 93 N.M. 685, 604 P.2d 823 (Ct.App.1979). However, to be prejudicial, a party must offer such fact in evidence, or intentionally use some circuitous method of informing the jury of liability insurance, followed by the admission thereof. If the fact is denied admission, the party whose insurance coverage has somehow been disclosed, may request the court to give UJI Civ. 2.8. This instruction explains the fact that insurance has no bearing on any issue and the jury must refrain from giving it any consideration. Defendant did not want this instruction given because it would focus the issue in the minds of the jury.

We have held, Sutin, J., dissenting, that where defense counsel's reference to insurance in an opening statement was improper, prompt admonishment thereof by the court was sufficient to avoid a mistrial because the admonishment eliminated any prejudicial effect. *Chavez v. Chenoweth*, 89 N.M. 423, 553 P.2d 703 (Ct.App.1976). Defendant did not want the trial court to admonish the jury.

Rule 411 is not applicable. Plaintiff's response to the question asked would have been proper if the word "insurance" had not been used. Lawyers in the trial of tort cases should advise their witnesses to refrain from mentioning the word "insurance" unless it is relevant to an issue set forth in Rule 411. Plaintiff's answer was irresponsive or inadvertent.

▆ The rule appears to be uniform that if a lawyer propounds a question which calls for proper evidence, the fact that an irresponsive or inadvertent answer includes a reference to insurance will not be grounds for declaring a mistrial. Annot. *Admissibility of evidence, and propriety and effect of questions, statements, comments, etc., tending to show that defendant in personal injury or death action carries liability insurance,* 4 A.L.R.2d 761, 784, § 12 entitled "Volun-

tary, unexpected, unresponsive, and incidental answers; invited answers" (1949), Later Case Service (1971) and Supplement (1980). Citation of other authority is unnecessary.

Another factor that we mention in passing is that defendant was represented by an attorney other than defendant's city attorney or its staff. The record does not show any introduction of attorneys to the jury. If defendant's attorney was introduced to the jury as one who was neither a city attorney nor a member of his staff, nor an appointed special assistant attorney, but a nonresident, experience is a teacher that the jury might assume defendant was insured. Insurance coverage is commonplace knowledge.

▆ The mention of "insurance" by plaintiff did not warrant a mistrial or new trial.

Defendant shall pay the costs of this appeal.

Affirmed.

IT IS SO ORDERED.

LOPEZ, J., concurs.

HERNANDEZ, C.J., dissents.

HERNANDEZ, Chief Judge (dissenting).

I respectfully dissent.

In my opinion, there is not sufficient evidence of causation to support the jury's verdict. Plaintiff, to establish the elements of his cause of action, should have shown negligence on the municipality's part in keeping its streets in a reasonably safe condition, and that this negligence caused an injury to plaintiff. *See Gallagher v. Albuquerque Metro.*, 90 N.M. 309, 563 P.2d 103 (Ct.App.1977). The mere fact that an unexplained accident occurs, or an accident is sustained, is not sufficient from which to infer negligence. *Waterman v. Ciesilski*, 87 N.M. 25, 528 P.2d 884 (1974).

The evidence, viewed in the light most favorable to plaintiff, shows that only Dr. Zimmerman advanced a theory explaining the City's possible negligence and how that

negligence might have caused plaintiff's injury. Dr. Zimmerman, from photographs taken by plaintiff, calculated that the gap between the manhole cover and the rim was three-quarters of an inch. He then concluded that the cover and rim were broken or worn to account for the gap, and that a gap of this size might cause the cover to rotate and pop out when the car drove over it. This theory was entirely based on Dr. Zimmerman's calculation of at least a three-quarter inch gap between the cover and rim, as he testified:

> I'm drawing my conclusions, based upon the physical situation that exists in those photographs * * * * So I took the measurements on the photograph and I estimated this to be three-quarters of an inch [the gap between the rim and manhole cover] * * * *

Q. If you are incorrect in that, being able to do that to that fine a degree, then all the rest of your discussions about dimensions, they all rise and fall on that one dimension, don't they?

A. That's right.

Q. And the rest of what you said becomes totally irrelevant information, if you're wrong about what the gap was?

A. I said that my main assumption was the gap * * * *

Plaintiff then testified that he had actually measured the gap between the cover and rim after the accident, and that the gap by his measurement was three-eighths of an inch and not three-quarters of an inch, as Dr. Zimmerman calculated. With this testimony, the factual basis of Dr. Zimmerman's opinion disappeared, and his opinion and conclusions became mere speculation which will not support a judgment. A jury may infer the existence of facts reasonably and logically resulting from facts proved, *Samora v. Bradford*, 81 N.M. 205, 465 P.2d 88 (Ct.App.1970); I see no reasonable inference which may be drawn from the facts as proven that would support a finding that the City's negligence caused plaintiff's injuries. Accordingly, I would remand with instructions to the trial court to vacate the judgment and enter a judgment in favor of defendant.